[S. F. No. 15914.   In Bank.—April 19, 1938.]

WESTERN LITHOGRAPH COMPANY (a Corporation), Petitioner, v. STATE BOARD OF EQUALIZATION et al., Respondents.

Morrison, Hohfeld, Foerster, Shuman & Clark, Louis Ferrari and E. A. Miller for Petitioner.

U. S. Webb, Attorney-General, H. H. Linney, Deputy Attorney-General, and James J. Arditto, Deputy Attorney-General, for Respondents.

SHENK, J.—*Mandamus.* The petitioner Western Lithograph Company, filed with the State Board of Equalization a claim for refund of sales taxes imposed pursuant to the Retail Sales Tax Act (Stats. 1933, p. 2599, as amended Stats. 1935, pp. 1225, 1252, 1256), amounting to $356.05 and theretofore paid by it. The claim was rejected and this proceeding was brought to compel the allowance and payment of the claim.

During the first quarter of 1937 the petitioner sold tangible personal property to Bank of America National Trust and Savings Association for use in this state at a total purchase price of $11,868.33. It included in its return for said quarter the gross amount received from the sales so made and payment of the three per cent computed thereon. The reason advanced by the petitioner for the allowance of the claim for refund is that the bank is an instrumentality of the United States government and is not subject to any tax by the state except in the manner prescribed by section 5219, Revised Statutes (12 U. S. Code, sec. 548), in conjunction with article XIII, section 6, of the Constitution of California and the Bank and Corporation Franchise Tax Act (Stats. 1929, p. 19, as amended), which do not permit the imposition on the bank of a tax such as contemplated by the Retail Sales Tax Act.

We may assume, for the purposes of this proceeding, that if the tax imposed pursuant to the provisions of the State Retail Sales Tax Act is a tax on the consumer or purchaser of the goods sold, then the petitioner is entitled to the relief sought.

It is further assumed that the bank, as a national bank, is an instrumentality of the United States, as contemplated by *McCulloch* v. *Maryland,* 4 Wheat. 316 [4 L. Ed. 579], and cases following it (see *Davis* v. *Elmira Sav. Bank,* 161 U. S. 275 [16 Sup. Ct. 502, 40 L. Ed. 700]; *First Nat. Bank* v. *Anderson,* 269 U. S. 341, 347 [46 Sup. Ct. 135, 70 L. Ed. 295]; *Iowa-Des Moines Bank* v. *Bennett,* 284 U. S. 239, 244 [52 Sup. Ct. 133, 76 L. Ed. 265]), and as such is

not subject to tax by the state except with the consent of and in the manner prescribed by congress.

■ The immunity of the state and federal governments from taxation of the one by the other was created out of the necessity for preserving the independence of the dual system of government under our constitutional system. As stated in *Metcalf & Eddy* v. *Mitchell*, 269 U. S. 514, at page 523 [46 Sup. Ct. 172, 70 L. Ed. 384], "Its origin was due to the essential requirement of our constitutional system that the federal government must exercise its authority within the territorial limits of the states, and it rests on the conviction that each government, in order that it may administer its affairs within its own sphere, must be left free from undue influence by the other", citing among other cases, *McCulloch* v. *Maryland, supra.*

■ That this principle of immunity has its inherent limitations has also been recognized. (*Helvering* v. *Powers*, 293 U. S. 214, 225 [55 Sup. Ct. 171, 79 L. Ed. 291] and cases cited.) The decision in *Davis* v. *Elmira Sav. Bank, supra,* at page 283, indicated that the exercise of authority sought to be condemned or avoided must be one which "either frustrates the purpose of the national legislation or impairs the efficiency of these agencies of the federal government to discharge the duties, for the performance of which they were created". And in *Helvering* v. *Powers, supra* (pp. 224–225), it was said: "But whether that field of activity, in relation to a state, carries immunity from federal taxation is a question which compels consideration of the nature of the activity, apart from the mere creation of offices for conducting it, and of the fundamental reason for denying federal authority to tax. That reason, as we have frequently said, is found in the necessary protection of the independence of the national and state governments within their respective spheres under our constitutional system. . . . The principle of immunity thus has inherent limitations."

It was also said in *Metcalf & Eddy* v. *Mitchell, supra,* following the previous quotation herein from that case: "In a broad sense, the taxing power of either government, even when exercised in a manner admittedly necessary and proper, unavoidably has some effect upon the other. The burden of federal taxation necessarily sets an economic limit to the practical operation of the taxing power of the states, and *vice*

*versa.* Taxation by either the state or the federal government affects in some measure the cost of operation of the other.

"But neither government may destroy the other nor curtail in any substantial manner the exercise of its powers. Hence the limitation upon the taxing power of each, so far as it affects the other, must receive a practical construction which permits both to function with the minimum of interference with the other; and that limitation cannot be so varied or extended as seriously to impair the taxing power of the government imposing the tax . . . or the appropriate exercise of the functions of the government affected by it. . . . "

It was held in that case that a federal tax on the income of consulting engineers earned in part under contracts to furnish professional services to certain states and municipalities, was not such an interference. The court said (p. 524) : "But here the tax is imposed on the income of one who is neither an officer nor an employee of government and whose only relation to it is that of contract, under which there is an obligation to furnish service, for practical purposes not unlike a contract to sell and deliver a commodity. The tax is imposed without discrimination upon income whether derived from services rendered to the state or services rendered to private individuals. In such a situation it cannot be said that the tax is imposed upon an agency of government in any technical sense, and the tax itself cannot be deemed to be an interference with government, or an impairment of the efficiency of its agencies in any substantial way." (Citing cases.)

The following language in the case of *Willcuts* v. *Bunn,* 282 U. S. 216, at page 225 [51 Sup. Ct. 125, 75 L. Ed. 304, 71 A. L. R. 1260], is also illustrative of the limitations of the principle: "The limitation of this principle to its appropriate application is also important to the successful working of our governmental system. The power to tax is no less essential than the power to borrow money, and, in preserving the latter, it is not necessary to cripple the former by extending the constitutional exemption from taxation to those subjects which fall within the general application of non-discriminatory laws, and where no direct burden is laid upon the governmental instrumentality, and there is only a remote, if any, influence upon the exercise of the functions of government." Thus in

*Liggett & Myers Co.* v. *United States,* 299 U. S. 383 [57 Sup. Ct. 239, 81 L. Ed. 294], it was held that a federal tax imposed on the manufacture of tobacco, although the duty of payment was postponed until removal or sale, created no direct burden upon the state, but that its effect was incidental, indirect and permissible within the doctrine approved by the cases cited by the court.

Having in mind the foregoing principle and its general limitations, we proceed to examine the provisions of the Retail Sales Tax Act. Section 3 of the act (Stats. 1935, p. 1252), provides: ''For the privilege of selling tangible personal property at retail a tax is hereby imposed upon retailers at the rate of two and one-half per cent of the gross receipts of any such retailer from the sale of all tangible personal property sold at retail in this state on and after August 1, 1933; and at the rate of three per cent . . . on and after July 1, 1935.'' The term ''gross receipts'' is defined (section 2 [7]), as the total amount of the sale price, with other inclusions not pertinent here; but also that ''for the purpose of this act the total amount of the sale price above mentioned shall be deemed to be the amount received exclusive of the tax hereby imposed; provided, that the retailer shall establish to the satisfaction of the board that the tax imposed hereunder had been added to the sale price and not absorbed by the retailer.''

Section 8½ (Stats. 1933, p. 2599) reads: ''The tax hereby imposed shall be collected by the retailer from the consumer in so far as the same can be done. This section is hereby declared to be separable and distinct from all other portions of this act, and shall not be deemed a consideration or inducement for the enactment of the whole or any portion of this act. If this section be for any reason declared invalid, the remainder of this act shall remain in full force and effect and shall be as completely operative as though this section had not been included herein.''

Section 9 in its pertinent parts provides: ''The tax levied hereunder shall be a direct obligation of the retailer and shall be due and payable in quarterly installments. . . . The board may by regulation provide that the amount collected by the retailer from the consumer, in reimbursement of taxes imposed by this act, shall be displayed separately from the list,

advertised in the premises, marked, [market] or other price on the sales check or other proof of sale."

Section 5 specifically exempts from the provisions of the act and from the computation of tax levied, assessed or payable, "the gross receipts from sales of tangible personal property which this state is prohibited from taxing under the Constitution or laws of the United States of America, or under the Constitution of this State".

■ The petitioner places reliance on the last-quoted provision as authority or direction that the gross receipts from sales of tangible personal property to instrumentalities of the federal government are not to be included in the quarterly returns made by the taxpayer. This is true only if otherwise the tax must be deemed to be imposed on the federal instrumentality within the inhibition of the principle under consideration. It is not within the prescribed inhibition unless it is in fact a tax directly upon the government instrumentality, or, if not, its effect is nevertheless so direct as to constitute it a substantial as distinguished from an indirect and remote interference with the exercise of the govermental functions delegated to the federal instrumentalities.

■ The provisions of the act itself specifically are that the tax is laid upon and is a direct obligation of the retailer. Although the act furnishes the method by which the retailer may calculate reimbursement to himself by listing separately the amount of the tax from the sales price, nevertheless section 8½ and other provisions of the act specially negative any intent of the legislature that the tax should be considered as a tax on the consumer. In every case in which that question has arisen under the California Retail Sales Tax Act, the courts have uniformly and consistently recognized the legislative intent and adhered to the construction that the tax is upon the retailer and not upon the consumer. (*Yosemite Park & Curry Co.* v. *Johnson,* Sac. No. 5176, 10 Cal. (2d) 770 [76 Pac. (2d) 1191]; *M. G. West Co.* v. *Johnson,* 20 Cal. App. (2d) 95 [66 Pac. (2d) 1211]; *Roth Drug, Inc.,* v. *Johnson,* 13 Cal. App. (2d) 720, 736 [57 Pac. (2d) 1022]; *Graham Bros., Inc.,* v. *Los Angeles,* 6 Cal. App. (2d) 203 [44 Pac. (2d) 452]; *People* v. *Herbert's of Los Angeles, Inc.,* 3 Cal. App. (2d) 482 [39 Pac. (2d) 829]; *Meyer Const. Co.* v. *Corbett,* 7 Fed. Supp. 616.) Where the same question has arisen with reference to the administration and effect of simi-

lar provisions in the Motor Vehicle Fuel License Tax Act (Stats. 1923, p. 571, as amended), the same answer has uniformly been given. (*Standard Oil Co. of California* v. *Johnson*, Sac. Nos. 5144, 5145, 10 Cal. (2d) 758 [76 Pac. (2d) 1184]; *People* v. *Ventura Refining Co.*, 204 Cal. 286, 294 [268 Pac. 347, 283 Pac. 60]; *Rio Grande Oil Co.* v. *Los Angeles*, 6 Cal. App. (2d) 200 [44 Pac. (2d) 451].)

▮ The law contemplates the imposition of the fixed rate of the tax on the gross receipts, as defined by the act, and not on the individual sale of merchandise; and the provision for a bookkeeping method to compute the amount of the tax separately from the sales price does not alter this fact (*Roth Drug, Inc.*, v. *Johnson, supra*, p. 738.) "That in ultimate effect the fund out of which payment [of the tax] is made may be or in fact has been obtained by the dealer from his customers does not make the tax a levy upon the consumer." (*People* v. *Herbert's of Los Angeles, Inc., supra*.)

▮ As noted in *Meyer Construction Co.* v. *Corbett, supra*, the act creates the relationship of sovereign power and taxpayer between the state and the retailer, and not between the state and the consumer. Therefore when the question has been whether the tax is collectible on receipts from sales to municipalities within the state for use in governmental functions it has been held that the retailer must pay the tax. (*Rio Grande Oil Co.* v. *Los Angeles, supra; Graham Brothers* v. *Los Angeles, supra*.)

In large part the controversy has resulted from the inclusion in the act of a specific method by which the retailer may calculate reimbursement of the tax from his customers. Had no such provision been made, but the tax had been imposed on the retailer at the specified rate on gross receipts from sales without more, the question would probably not have arisen, and the tax would have been considered a tax to be absorbed by the retailer and reflected in the higher prices of the commodities, just as any tax on property or business. In incorporating such provisions, however, the legislature plainly indicated its intent nevertheless to lay the tax solely on the retailer and to create the tax relationship between the latter only and the state. Furthermore, the provisions of the act, as indicated by the language quoted from section 2 (f), were undoubtedly designed to avoid the result in the case of *Lash's Products Co.* v. *United States*, 278 U. S.

175 [49 Sup. Ct. 100, 73 L. Ed. 251]. There the act imposing ten per cent tax did not include a provision for separation of the price and tax, although the regulations and practice of the commission permitted it. The taxpayer contended that where the practice was not followed but nevertheless the sales price contained the amount of the tax he was liable only for the tax computed by first deducting the ten per cent from the sales price. The court expressed a doubt of the propriety of the commission's practice under the provisions of the act, but held that in any event the taxpayer before the court must take the act as he found it and that his tax must be computed on the total amount actually received. The suggestion contained in the court's statement, however, is obvious, namely: "Naturally a delicate treatment of a tax on sales might seek to avoid adding a tax on the amount of the tax." The effect of the provisions of the California Retail Sales Tax Act is to afford the opportunity for that treatment and nothing more. The method of listing the price and the tax separately and defining taxable gross receipts as the amount received less the amount of the tax added, merely avoids payment by the retailer of a tax on the amount of the tax. Under such provisions the effect stated in the case last cited still obtains, namely, that "the purchaser does not pay the tax. He pays or may pay the seller more for the goods because of the seller's obligation, but that is all," and "the amount added because of the tax is paid to get the goods and for nothing else. Therefore it is part of the price. . . . " ▮ The tax being a direct obligation of the retailer and, so far as the consumer is concerned, a part of the price paid for the goods and nothing else, it is neither in fact nor in effect laid upon the consumer. It does not become a tax on the sale nor because of the sale, but remains an excise tax for the privilege of conducting a retail business measured by the gross receipts from sales.

▮ Unquestionably the act is non-discriminatory. It operates upon all alike in the same class, and does not result in exacting more from the federal instrumentality than is paid by other individuals. To conclude that the bank may come into the open market and purchase goods at a price less than other buyers merely by insisting that the amount of a non-discriminatory tax imposed upon sellers should first be deducted therefrom, is to accord to federal instrumentalities

some favor or grace which is not necessarily within the contemplation of the principle of immunity here asserted. It cannot be said that the principle embraces the inherent right in either government to come into the open market and purchase goods at a lower price than paid by other consumers by clipping therefrom the equivalent of non-discriminatory taxes validly imposed on the seller by the other government, and consequently reduce that government's revenues to a proportionate extent. This view is in harmony with the cases hereinabove cited which recognize and define the inherent limitations of the doctrine of immunity, and follows the pronouncements of the Supreme Court of the United States in its more recent decisions formulating its conclusions on the applicability of the principle and its limitations in relation to other taxing statutes. (*James* v. *Dravo Contracting Co.*, 302 U. S. 134 [58 Sup. Ct. 208, 82 L. Ed. 155, 114 A. L. R. 318]; followed in *Silas Mason Co., Inc.*, v. *Tax Commission of Washington*, 302 U. S. 186 [58 Sup. Ct. 233, 82 L. Ed. 187], and *Atkinson* v. *State Tax Commission of Oregon*, (Jan. 31, 1938, No. 303 Oct. Term, 1937), 303 U. S. 20 [58 Sup. Ct. 419, 82 L. Ed. 621].)

We are aware that statements which might be said to support a contrary conclusion have been made in the cases of *Panhandle Oil Co.* v. *Mississippi ex rel. Knox*, 277 U. S. 218 [48 Sup. Ct. 451, 72 L. Ed. 857, 56 A. L. R. 583], *Indian Motorcycle Co.* v. *United States*, 283 U. S. 570 [51 Sup. Ct. 601, 75 L. Ed. 1277], and *Graves* v. *Texas Co.*, 298 U. S. 393 [56 Sup. Ct. 818, 80 L. Ed. 1236]. Those cases involved respectively a law of Mississippi imposing an excise tax of one cent per gallon upon the sale of gasoline; a statute of Massachusetts levying an excise tax on sales; and a gasoline tax act of Alabama.

In the case of *James* v. *Dravo Contracting Co., supra,* the court had before it for consideration the Gross Sales and Income Tax Law of West Virginia, which provided for annual privilege taxes on account of "business and other activities." That law imposed upon the contracting company a tax equal to two per cent of the gross income from its business. The imposition of the tax on income derived from a contract with the federal government, executed to further the construction of certain dams, raised the question whether the tax laid a direct burden upon the federal government. The holding was

that the tax was not one on the government, its property or officers, nor was it upon an instrumentality of the government, or upon the contract. The court reiterated and redefined the limitations of the principle of immunity as stated in its former decisions. Although it said, "The application of the principle which denies validity to such a tax has required the observing of close distinctions in order to maintain the essential freedom of government in performing its functions, without unduly limiting the taxing power which is equally essential to both nation and state under our dual system," it applied, as compelling a conclusion that the tax was valid, the limitation on the principle of immunity stated in *Willcuts* v. *Bunn, supra,* and hereinabove quoted. In the Dravo case the court also said: "But if it be assumed that the gross receipts tax may increase the cost to the government, that fact would not invalidate the tax. With respect to that effect, a tax on the contractor's gross receipts would not differ from a tax on the contractor's property and equipment necessarily used in the performance of the contract. Concededly, such a tax may validly be laid. Property taxes are naturally, as in this case, reckoned as a part of the expense of doing the work." The court concluded that the tax provided by the West Virginia statute did not interfere in any substantial way with the performance of federal functions, and was a valid exaction. It expressly declined to consider whether the same result would follow from the application of the principles stated if commodities or goods were furnished rather than services. It refused expressly to overrule the cases of *Panhandle Oil Co.* v. *Mississippi ex rel. Knox; Indian Motorcycle Co.* v. *United States,* and *Graves* v. *Texas Co., supra,* but noted that in those cases the taxes were held to be invalid because laid on the sales to the respective governments, and further that theretofore those cases had been distinguished and must be deemed limited to their particular facts. Notwithstanding the holdings or expressions in the cases distinguished, it must here be concluded that a proper construction of the Retail Sales Tax Act of California is that the tax is not on the sale, but rather that it is a tax in the same category as property and excise taxes payable by an independent contractor engaged in the business of retail sales which, although they are reflected in the higher cost of the product or commodity offered, must be considered merely as a necessary ex-

pense of conducting the business. It is a tax computed on the gross receipts from the conduct of the business of the retail merchant. Essentially, as intimated in *Metcalf & Eddy* v. *Mitchell, supra,* there does not appear to be any sound basis for a distinction because the receipts affording the measure of the tax are derived from the retail business conducted by an independent contractor or merchant, rather than from the sale of services, where otherwise the imposition is non-discriminatory. Clearly the imposition of a privilege tax on the retailer of commodities does not interfere with the power of the government to borrow money; nor does it affect in any substantial manner the efficiency of its agency in the performance of its duties, nor the ability of the persons taxed to discharge their contractual obligations to the government, nor the ability of the government to procure the services of private individuals to aid them in their undertakings.

Following the path pointed by the court in the Dravo case, we conclude that the tax on the retailer under the Retail Sales Tax Act of this state imposed on the basis of a return which includes receipts derived from sales of tangible personal property to the bank, a federal instrumentality, does not unduly burden the federal government nor interfere with the exercise of the governmental functions delegated to its instrumentality, and was therefore validly imposed.

The petitioner relies with much confidence on the decision of the District Court of Appeal in *M. G. West Co.* v. *Johnson, supra,* decided in April, 1937, wherein it was held, among other things, that the tax imposed on the petitioner therein under similar facts was in substance a tax on the government instrumentality and as such was prohibited not only by the federal statute under which those agencies were incorporated but also by the doctrine of *McCulloch* v. *Maryland, supra.* It is true that a petition in the West Company case for a hearing in this court was denied. It also appears that the petition of the attorney-general for a writ of *certiorari* in the Supreme Court of the United States was denied on October 11, 1937, and that subsequent to the decision of the Supreme Court in the case of *James* v. *Dravo Contracting Co., supra,* a petition for a rehearing in that court of its denial of a petition for *certiorari* in the West Company case was filed by the attorney-general and denied on February 7, 1938. It is likewise true that the denial of the petition for a hearing in

this court after decision by the District Court of Appeal in the West Company case was not "an affirmative approval by this court of the propositions of law laid down in such opinion". (*People* v. *Davis*, 147 Cal. 346, 350 [81 Pac. 718].) Nor does the denial of the writ of *certiorari* in the West Company case by the Supreme Court of the United States require this court to follow the reasoning and conclusions of the District Court of Appeal. It is not to be supposed that the United States Supreme Court would recognize any necessity to assume jurisdiction of a controversy involving the validity of a state taxing statute which had been construed adversely to the state's contentions in the state court. A thorough consideration of the questions involved in the case at bar has convinced us that the decision of the District Court of Appeal in the West Company case should not in any wise be deemed controlling in this proceeding. Application for a peremptory writ is denied and the alternative writ is discharged.

Curtis, J., Seawell, J., Waste, C. J., Nourse, J., *pro tem.*, Houser, J., and Edmonds, J., concurred.

Rehearing denied.