[Civ. No. 7326.   Third Dist.   Dec. 22, 1947.]

NATIONAL DISTILLERS PRODUCTS CORPORATION (a Corporation), Respondent, v. BOARD OF EQUALIZATION OF THE STATE OF CALIFORNIA et al., Appellants.

Fred N. Howser, Attorney General, Jas. E. Sabine, Deputy Attorney General, and Hugh J. Strachan for Appellants.

Anthony J. Kennedy for Respondent.

PEEK, J.—This is an appeal from a judgment in favor of plaintiff in an action for refund of distilled spirits excise taxes paid under protest and levied under section 24 of the Alcoholic Beverage Control Act [Stats. 1935, p. 1123, as amended; 2 Deering's Gen. Laws, Act 3796].

The agreed statement of facts and the stipulation upon which the case was submitted to the trial court show that plaintiff entered into a contract with the United States Government through the Medical Department Procurement District at St. Louis, Missouri, to furnish the United States Army with 41,000 quart size bottles of bottled in bond whiskey. Under the terms of the contract plaintiff was ordered to and did ship a portion of the whiskey, 209 cases of 12 bottles each, to the Commanding Officer, Los Angeles Medical Depot, Los Angeles, California. The order for the whiskey was neither solicited, received nor accepted in California. All of such negotiations were carried on at plaintiff's office in New York City, as was the payment made to respondent upon invoice rendered to the Procurement Office at St. Louis. The whiskey was withdrawn from a government bonded warehouse at Cleveland, Ohio. Delivery thereof was made on October 26, 1942, by shipment via common carrier at that point by plaintiff as the consignor to the Medical Depot at Los Angeles as consignee. The stipulation previously mentioned was that the whiskey was procured for medicinal and nonbeverage use.

The plaintiff's petition for a redetermination of the tax was denied by the defendant board. Plaintiff thereupon, under protest, paid the taxes so levied, and after its claim for review was likewise denied, the present action was instituted under provisions of section 34(i) of said act. At the conclusion of the hearing the trial court found that the whiskey

was not subject to taxation by this state as it had been procured for medicinal and not beverage purposes.

█ Authority is not lacking in support of respondent's contention that the imposition of the tax in this case would violate the federal Constitution in that the tax directly affects the United States in the performance of its governmental functions. (*Panhandle Oil Co.* v. *Mississippi*, 277 U.S. 218 [48 S.Ct. 451, 72 L.Ed. 857]; *Graves* v. *Texas Co.*, 298 U.S. 393 [56 S.Ct. 818, 80 L.Ed. 1236].) However, appellant asserts that these cases have been overruled not only with respect to their reasoning and rationale but also upon the actual decisions rendered.

The case chiefly relied upon by appellant as affecting this change in the application of the immunity doctrine is that of *Alabama* v. *King & Boozer*, 314 U.S. 1 [62 S.Ct. 43, 86 L.Ed. 3, 140 A.L.R. 615], wherein it was held that a sales tax when applied to sales made to a contractor for use in construction work for the United States under a cost-plus contract did not violate the implied immunity of the federal government from state taxation under the Constitution. In discarding the economic burden test adhered to by a sharply divided court in the Panhandle case, *supra*, the court stated: (314 U.S. at pp. 8-9.)

"The Government, rightly, we think, disclaims any contention that the Constitution, unaided by congressional legislation, prohibits a tax exacted from the contractors merely because it is passed on economically, by the terms of the contract or otherwise, as a part of the construction cost to the Government. So far as such a nondiscriminatory state tax upon the contractor enters into the cost of the materials to the Government, that is but a normal incident of the organization within the same territory of two independent taxing sovereignties. The asserted right of the one to be free of taxation by the other does not spell immunity from paying the added costs, attributable to the taxation of those who furnish supplies to the Government and who have been granted no tax immunity. So far as a different view has prevailed, see *Panhandle Oil Co.* v. *Mississippi*, and *Graves* v. *Texas Co.*, *supra*, we think it no longer tenable."

The principle enunciated therein that the incidence of the tax and not the economic burden is the test to determine the validity thereof, has been followed by the Supreme Court of this state in *Western Lithograph Co.* v. *State Board of Equali-*

*zation,* 11 Cal.2d 156 [78 P.2d 731, 117 A.L.R. 838], and in *United States* v. *Lee,* 153 Fla. 94 [13 So.2d 919]. In *Western Lithograph Co.* v. *State Board of Equalization, supra,* the court sustained a sales tax which was imposed upon a sale to an instrumentality of the federal government, a national bank, rather than to the government directly. In deciding the case, however, the court proceeded upon the theory that the difference was immaterial, stating: (p. 158.)

"It is further assumed that the bank, as a national bank, is an instrumentality of the United States, as contemplated by *McCulloch* v. *Maryland,* 4 Wheat. 316 [4 L.Ed. 579], and cases following it [citing cases], and as such is not subject to tax by the state except with the consent of and in the manner prescribed by congress."

The respondent also relies upon two cases decided by the United States Supreme Court subsequent to the *Alabama* v. *King & Boozer* case, *supra,* which, it is said, limit the application of that case to a situation where a private contractor stands between the seller and the government. We believe, however, that those two cases are clearly distinguishable from the King & Boozer case and from the present situation. In the first of these, *Mayo* v. *United States,* 319 U.S. 441 [63 S.Ct. 1137, 87 L.Ed. 1504, 147 A.L.R. 761], the tax which was held to violate the immunity of the federal government from taxation was laid directly upon the United States. The action was one to enjoin the Commissioner of Agriculture of the State of Florida from enforcing, against the United States, an act requiring the affixing of inspection tax stamps to bags of fertilizer owned by the government prior to distribution thereof as part of a national soil conservation program. It was specifically held that "These inspection fees are laid directly upon the United States. They are money exactions the payment of which, if they are enforceable, would be required before executing a function of government." (319 U.S. at p. 447, 87 L.Ed. p. 1508.) In the second, *United States* v. *County of Allegheny,* 322 U.S. 174 [64 S.Ct. 908, 88 L.Ed. 1209], the Supreme Court held invalid an ad valorem property tax assessment based upon the included value of machinery owned by the United States and leased to the manufacturer. While difficult to distinguish from the King & Boozer case as to the ultimate result reached, the expressed theory of the holding in that case is that the tax was imposed directly upon property owned by the United States and the burden indirectly laid upon the government,

although the tax was assessed against the private owner of the real property. The majority of the court took a strict view of the tax as a property tax and did not revert to the formerly repudiated test of burdensomeness as a criterion for determining the validity of the tax.

The additional case of *Standard Oil Co.* v. *Johnson,* 316 U.S. 481 [62 S.Ct. 1168, 86 L.Ed. 1611], also cited by respondent, does not appear to be in point. The statute under which the tax was there sought to be imposed specifically exempted therefrom sales to the government of the United States or any department thereof. The decision merely held that post exchanges are ''arms of the government deemed by it essential for the performance of governmental functions.'' The court expressly declined to pass upon the constitutionality of an application of the taxing statute to the sale there involved. But in view of the above-cited decisions there is no reason to believe that if the question were before the court the decision would not have favored the tax.

In the light of the decision in the Western Lithograph case and the clear language in the case of *Alabama* v. *King & Boozer, supra,* there appears to be no escape for respondent from the conclusion that the excise tax here was validly imposed upon the seller under the provisions of the taxing statute. The fact that such tax may be passed on to the government in the purchase price of the goods in a manner which is nondiscriminatory and on an equality with any other purchaser, does not invalidate the tax.

■ Respondent puts forward the argument adhered to by the trial court in its opinion that the sale being one for medicinal purposes is exempt from the tax under section 67.1 of the act. However, there is no such exemption in the act applicable to a sale of whiskey for medicinal purposes as such. Said section provides that ''No tax under this act shall be imposed upon the sale of . . . distilled spirits . . . for use in the trades, professions, or industries, but not for beverage use.'' Section 6 of the act authorizes and limits the nature of sales which may be made by different classes of licensees. Subdivision (i) thereof authorizes the holder of an industrial alcohol dealer's license to sell undenatured ethyl alcohol *''in packages of more than one gallon for use in the trades, professions or industries, and not for beverage consumption.''* (Italics added.) Subdivision (q) of the same section authorizes sales by a distilled spirits manufacturer

*"in packages larger than one gallon for use in the trades, professions or industries, and not for beverage use."* (Italics added.)

An industrial alcohol dealer is defined in section 2 (i 3) of the act as "a person who sells alcohol or distilled spirits *in packages of more than one gallon* for use in the trades, professions or industries, but not for beverage use." (Italics added.)

The Supreme Court of this state in *Commercial Solvents Corp.* v. *Riley,* 7 Cal.2d 731 at page 734 [62 P.2d 588], defined "Tax-free alcohol" or "industrial alcohol" under the act as it then existed to mean " 'undenatured ethyl alcohol or other distilled spirits in *packages of more than one gallon for use in the trades, professions or industries'* as described in section 6, subdivision (i).''

It follows that the exemption from the tax provided for in section 67.1 applies to sales of distilled spirits for use in the trades, professions or industries which in turn must necessarily be taken to mean only those made by licensees authorized to make such sales and defined by limitation to include only sales in packages of more than one gallon.

The reason for such restriction is obviously that of preventing circumvention of the statute if such sales of whiskey were made in small containers.

The further argument of plaintiff that there was no sale of the distilled spirits within this state because delivery was made in Ohio is nugatory in light of the agreed statement of facts and the provisions of the contract of purchase. In said statement, it is agreed that "Delivery of the whiskey under the contract was made under date of October 26, 1942, by shipment via common carrier at Cleveland, Ohio, by National Distillers Products Corporation, consignor, from Cleveland to the Medical Depot, United States Army, Los Angeles, California, the United States Government being the consignee." The terms of the contract were "F.O.B. Los Angeles Medical Depot, Los Angeles, California, Delivery at destination 12 days." The parties have thus foreclosed any contention other than that delivery was made to the Government in California.

The tax is further protested on the grounds that the purchase of distilled spirits by the War Department is not a sale within the meaning of the act for the reason that the United States is not a "person" as defined in section 2, subdivision (f) which reads:

" 'Person' includes any individual, firm, copartnership, joint adventure, association, corporation, estate, trust, business trust, receiver, syndicate or any other group or combination acting as a unit, and the plural as well as the singular number.''

Section 2(*l*) then defines a sale as follows:

" 'Sell' or 'sale' and the phrase 'to sell' means and includes any transaction whereby, for any consideration, title to alcoholic beverages is transferred from one person to another, and means and includes the delivery of alcoholic beverages pursuant to an order placed for the purchase of such beverages, and shall include soliciting or receiving an order for such beverages, but shall not include the return of alcoholic beverages by a licensee to the licensee from whom such alcoholic beverages were purchased.''

The argument is that for a sale to take place within the meaning of section 2(*l*) there must be a transfer of title from one ''person'' to another as the word ''person'' is defined in section 2(f).

Conceding that the federal government is not a person within the meaning of the act for the reason that the section thereof defining the word ''person'' does not include the United States, it does not follow that the transaction here involved does not come within the definition of a sale for the purpose of imposing a tax upon the National Distillers Products Corporation.

A reading of section 2(*l*) will clearly show that the proposition contended for by respondent takes into consideration but one of several definitions of ''sale'' included within the last-mentioned section. In the alternative, a sale ''means and includes (a transfer of title from one person to another) *and* means and includes the *delivery* of alcoholic beverages. . . .'' (Italics added.)

As above stated, there was clearly a delivery of the distilled spirits within the State of California pursuant to the contract between the respondent and the United States and therefore a ''sale'' within the definition of the act.

For the foregoing reasons the judgment is reversed.

Adams, P. J., and Thompson, J., concurred.

A petition for a rehearing was denied January 14, 1948.