THOMAS H. SYKES on Behalf of Himself and Other Interested Taxpayers and Retail Merchants of Mecklenburg County v. I. L. CLAYTON, Commissioner of the Department of Revenue of the State of North Carolina; DR. JAMES G. MARTIN, Chairman of the Board of County Commissioners of Mecklenburg County, and JOHN A. CAMPBELL, M. W. PETERSON, ROBERT D. POTTER and SAM T. ATKINSON, JR., Being the Members of the Board of County Commissioners of Mecklenburg County; MRS. SAMUEL C. HAIRE, Chairman of the Mecklenburg County Board of Elections; and Other Interested Parties

No. 273

(Filed 30 October 1968)

1. **Taxation §§ 5, 31— constitutionality of Mecklenburg local sales tax act**

The provisions of Chapter 1096, Session Laws of 1967, authorizing the imposition of a one per cent (1%) sales and use tax in Mecklenburg County upon approval by the voters of the County *is held* not void as violative of N. C. Constitution, Art. V, §§ 3 and 5, since the constitutional limitations set forth in these sections relate solely to the taxation of real and personal property, tangible and intangible, according to the value thereof, and are irrelevant in respect to the validity of the sales and use tax imposed by the 1967 Act.

2. **Statutes § 4— construction in regard to constitutionality**

In considering the constitutionality of a statute, every presumption is to be indulged in favor of its validity.

3. **Constitutional Law § 6— legislative powers**

The General Assembly is possessed of full legislative powers unless restrained by express constitutional provision or necessary implication therefrom.

4. **Appeal and Error § 3— review of constitutional questions**

The Supreme Court will not determine whether a statute is unconstitutional except with reference to a ground on which it is attacked and definitely drawn into focus by the attacker's pleadings.

5. **Appeal and Error §§ 3, 45— review of constitutional contentions — the brief**

Appellant's contention that enforcement of statute would violate his constitutional rights under N. C. Constitution, Art. I, § 17 and under U. S. Constitution, XIV Amendment, is deemed abandoned on appeal

where no reason or argument is stated or authority cited in his brief with reference to these constitutional provisions. Rule of Practice in the Supreme Court No. 28.

**6. Taxation § 15—   distinctions between sales and use taxes and property taxes**

The sales tax imposed by G.S. 105-164.4 and the use tax imposed by G.S. 105-164.6 are distinguishable from property taxes: (1) the sales tax is a privilege or license tax based on the sale or rental price of tangible personal property and is imposed only on transactions of persons engaged in specific businesses; (2) the use tax is an excise tax based on the cost or rental price of tangible personal property and is imposed only on transactions of a specific character.

**7. Statute § 5—   rules of construction — title of act**

When the meaning of an act is at all doubtful, the title or caption thereof should be considered as a legislative declaration of the tenor and object of the act.

**8. Constitutional Law § 7—   delegation of taxing power by legislature**

The enactment of Chapter 1096, Session Laws of 1967, authorizing the imposition of a one per cent sales and use tax in Mecklenburg County upon approval by the voters of that County does not constitute a surrender by the General Assembly of its powers of taxation.

APPEAL by plaintiff from a judgment entered by *Ervin, J.,* at April 15, 1968 Regular Schedule "A" Civil Session of MECKLENBURG, certified, pursuant to G.S. 7A-31, for review by the Supreme Court before determination by the Court of Appeals.

Plaintiff seeks to have declared void as violative of Article V, Section 3, and of Article V, Section 5, of the Constitution of North Carolina, the 1967 Act entitled, "AN ACT ENABLING MECKLENBURG COUNTY TO HOLD A SPECIAL ELECTION FOR THE PURPOSE OF CONSIDERING WHETHER THE COUNTY SHALL OR SHALL NOT IMPOSE AND LEVY A SALES AND USE TAX OF ONE PER CENT UPON THE SALE, USE AND OTHER TAXABLE TRANSACTIONS UPON WHICH THE STATE NOW IMPOSES A THREE PER CENT SALES AND USE TAX," being Chapter 1096, Session Laws of 1967. He prays that defendants be enjoined from enforcing its provisions and from collecting the tax imposed thereby.

The cause came on for hearing before Judge Ervin on March 7, 1968, on plaintiff's motion for an interlocutory order restraining defendants until the final determination of the action. At said hearing, the City of Charlotte applied for and was granted permission to intervene as a party defendant. The verified complaint was the only evidence. Decision was deferred.

On March 28, 1968, separate demurrers to the complaint were filed (1) by defendant Clayton, Commissioner of Revenue, and (2)

by defendants Martin, *et al.*, County Commissioners of Mecklenburg. On April 2, 1968, a demurrer to the complaint was filed by defendant City of Charlotte.

Judgment for defendants was entered by Judge Ervin at April 15, 1968 Civil Session. It contains no reference to any of said demurrers.

The findings of fact which Judge Ervin incorporated in his judgment and the factual allegations of the complaint are identical.

The final portion of the judgment is as follows:

"Based upon the foregoing findings of fact, the Court makes the following conclusions of law:

"1. That the plaintiff is not entitled to the injunctive relief sought in this action because he and the other interested persons on whose behalf this action has been brought have an adequate remedy at law through the use of G.S. 105-406 and related statutes.

"2. That, even if the plaintiff does not have an adequate remedy at law in accordance with the preceding paragraph, the Court concludes as a matter of law that the tax authorized by Chapter 1096 of the 1967 North Carolina Session Laws, which tax has been approved by the voters of Mecklenburg County, is constitutional and that this action should therefore be dismissed on its merits.

"Based upon the foregoing conclusions of law, IT IS HEREBY ORDERED, ADJUDGED AND DECREED that this action be, and the same hereby is dismissed with the costs to be taxed to the plaintiff."

Plaintiff excepted and appealed.

*Peter A. Foley for plaintiff appellant.*

*Attorney General Bruton and Assistant Attorney General Gunn for I. L. Clayton, Commissioner of Revenue, defendant appellee.*

*James O. Cobb and William H. Cannon for the Board of County Commissioners of Mecklenburg County, and Henry W. Underhill, Jr., for the City of Charlotte, defendant appellees.*

BOBBITT, J.

[1] We pass, without decision or discussion, questions as to whether plaintiff has an adequate remedy at law and, if not, whether the facts alleged are sufficient to show enforcement of the 1967 Act would cause irreparable injury to plaintiff. Having reached the conclusion the 1967 Act is not void as violative of Sections 3 and 5 of

Article V of our Constitution, we deem it in the public interest to base decision on that ground without regard to procedural questions.

The portions of the 1967 Act (Chapter 1096, Session Laws of 1967) pertinent to decision of the questions presented by plaintiff's appeal are summarized (except where quoted) below.

Section 1 of the 1967 Act declares the purpose thereof is "to provide Mecklenburg County and its municipalities with an added source of revenue and to assist them in meeting their growing financial needs by providing that said county may by special election adopt and levy a one per cent (1%) sales and use tax as (thereinafter) provided."

Section 2 thereof provides: "The Board of Elections of Mecklenburg County, upon the written request of the Mecklenburg Board of County Commissioners, or upon receipt of a petition signed by qualified voters of the county equal in number to at least fifteen per cent (15%) of the total number of votes cast in the county, at the last preceding election for the office of Governor, shall call a special election for the purpose of submitting to the voters of the county the question of whether a one per cent (1%) sales and use tax as (thereinafter) provided will be levied." In addition, Section 2 prescribes in detail the requirements and procedures for the conduct of such special election.

Section 3 provides: "In the event a majority of those voting in a special election held . . . shall approve the levy of the local sales and use tax, the tax shall be imposed on the first day of the month following the expiration of 90 days from the date of the election. Upon receipt of a certified statement from the Mecklenburg County Board of Elections of the results of a special election approving the tax in Mecklenburg County, the Commissioner of Revenue shall proceed as authorized . . . to administer the tax in said county."

In the event of approval by a majority of those voting in such special election, the tax imposed under Section 4 is a one per cent (1%) sales tax on items on which the State imposes a three per cent (3%) sales tax under G.S. 105-164.4, and the tax imposed under Section 5 is a tax of one per cent (1%) on items on which the State imposes a three per cent (3%) use tax under G.S. 105-164.6, the maximum "additional tax" on one sale being ten ($10.00) dollars. The 1967 Act provides that its provisions and "the provisions of the State Sales and Use Tax Act," being Article 5 of Chapter 105 of the General Statutes, "insofar as it is practicable, shall be harmonized."

Since the 1967 Act is attacked in its entirety by plaintiff on the ground *the imposition of a tax* pursuant to its terms contravenes Sections 3 and 5 of Article V of our Constitution, it is unnecessary to set forth provisions of the 1967 Act relating to requirements and procedures with reference to the collection and distribution of the proceeds. Suffice to say, other sections of the 1967 Act provide (1) that the retailers pay the additional tax to the North Carolina Commissioner of Revenue in accordance with regulations promulgated by him; (2) that the retailers collect from purchasers in accordance with a prescribed schedule; and (3) that the Commissioner of Revenue, after deducting the cost of collection, distribute the net proceeds to Mecklenburg County and the municipalities therein in accordance with a prescribed formula.

[2-4] "In considering the constitutionality of a statute, every presumption is to be indulged in favor of its validity." Stacy, C. J., in *State v. Lueders,* 214 N.C. 558, 561, 200 S.E. 22, 24. Too, ". . . under our Constitution, the General Assembly, so far as that instrument is concerned, is possessed of full legislative powers unless restrained by express constitutional provision or necessary implication therefrom." Hoke, J. (later C.J.), in *Thomas v. Sanderlin,* 173 N.C. 329, 332, 91 S.E. 1028, 1029. And, ordinarily, this Court will not undertake to determine whether a statute is unconstitutional except with reference to a ground on which it is attacked and definitely drawn into focus by the attacker's pleadings. *Hudson v. R. R.,* 242 N.C. 650, 667, 89 S.E. 2d 441, 453; *Surplus Stores, Inc., v. Hunter,* 257 N.C. 206, 211, 125 S.E. 2d 764, 768.

[5] It is noted that plaintiff alleged *generally* that enforcement of the 1967 Act would violate his constitutional rights under Article I, Section 17, of the Constitution of North Carolina, and under the Fourteenth Amendment to the Constitution of the United States. However, his complaint does not set forth any specific contention with reference thereto. On appeal, "no reason or argument is stated or authority cited" in his brief with reference to these constitutional provisions. Hence, whatever contention plaintiff may have had in mind is taken as abandoned. Rule 28, Rules of Practice in the Supreme Court, 254 N.C. 783, 810.

Our question is whether the General Assembly *is prohibited* by Sections 3 and 5 of Article V of the Constitution of North Carolina from imposing, for the benefit of Mecklenburg County and its municipalities, the one per cent (1%) sales and use tax prescribed by Chapter 1096, Session Laws of 1967, when such tax is approved by

a majority of those who vote in a special Mecklenburg County election held and conducted pursuant to the provisions of said 1967 Act.

The additional one per cent (1%) Mecklenburg County tax is essentially the same in nature as the three per cent (3%) State tax imposed by G.S. 105-164.4 and by G.S. 105-164.6. The provisions of the "North Carolina Sales and Use Tax Act" (Article 5 of Chapter 105 of the General Statutes), including G.S. 105-164.4 and G.S. 105-164.6, are set forth in detail and discussed by Moore, J., in *Canteen Service v. Johnson, Comr. of Revenue,* 256 N.C. 155, 123 S.E. 2d 582, 91 A.L.R. 2d 1127.

In *Canteen Service v. Johnson, Comr. of Revenue, supra,* the question was whether a retailer who sold articles at less than ten cents (10¢) each through coin operated automatic vending machines was required to pay the three per cent (3%) sales tax on the amount of such sales. The retailer (Canteen Service) contended the North Carolina tax, although denominated a sales tax, was in law a purchasers' tax; and that, since the retailer could not collect from the purchaser on such sales, the retailer was not obligated to pay tax on such sales. Rejecting this contention, this Court held the retailer was obligated to pay the tax on the aggregate of all sales. The basis of decision was the holding that "the tax is primarily and essentially a privilege or license tax imposed on retailers." Accord: *Watson Industries v. Shaw, Comr. of Revenue,* 235 N.C. 203, 69 S.E. 2d 505.

G.S. 105-164.4 levies and imposes *"a privilege or license tax* upon every person who engages in the business of selling tangible personal property at retail, renting or furnishing tangible personal property or the renting and furnishing of rooms, lodgings and accommodations to transients, in this State. . . ." (Our italics.)

G.S. 105-164.6 levies and imposes *"(a)n excise tax* . . . on the storage, use or consumption in this State of tangible personal property purchased within and without this State for storage, use or consumption in this State. . . ." (Our italics.)

[6]    The privilege or license tax imposed by G.S. 105-164.4 is based on the *sale* or *rental price* of *tangible* personal property and on receipts from the rental of "rooms, lodgings and accommodations" to transients. The excise tax imposed by G.S. 105-164.6 is based on the *cost* or *rental price* of tangible personal property. The amount of the sales tax and of the use tax is not determined by the *value* of the property involved. Taxes are imposed only on *transactions* of persons engaged in specific businesses (sales tax) or on *transactions*

of a specific character (use tax). They are not imposed generally on all persons according to the value of real property and personal property, tangible and intangible, owned by them.

In holding the Tennessee Retail Sales Tax Act imposed a privilege tax and not a property or ad valorem tax, the Supreme Court of Tennessee, in opinion by Chief Justice Neil, said: "Tax statutes similar to the one here assailed have been enacted in one form or another in 28 States of the United States. We find, without exception, that the courts have uniformly held them to have imposed an excise or privilege tax and not a tax upon property. See Annotations in 89 A.L.R. pp. 1432 to 1442; 110 A.L.R. pp. 1485 to 1486. In the last annotation it is said: 'In recent decisions the so-called "sales tax" has been regarded as an excise or privilege tax, and not a property tax.' See also *Western Lithograph Co. v. State Board of Equalization,* 11 Cal. 2d 156, 78 P. 2d 731, 117 A.L.R. 838, 846; 128 A.L.R. 894, 895." *Hooten v. Carson,* 186 Tenn. 282, 209 S.W. 2d 273.

This excerpt from 47 Am. Jur., Sales and Use Taxes § 2, is noted: "Where it is a question whether a sales tax is an excise tax as distinguished from a property tax, it frequently being necessary to determine this point because of the applicability of particular constitutional provisions to property taxes but not to excises, the view is uniformly held that sales taxes are not property taxes but are excise taxes. . . ."

Plaintiff attacks the 1967 Act as violative of Sections 3 and 5 of Article V *as amended in 1962.*

Amendments to Sections 3 and 5 of Article V, adopted by the people at the general election held on November 6, 1962, were submitted by the General Assembly by its enactment of Chapter 1169, Session Laws of 1961, entitled "AN ACT TO AMEND SECTION 3, ARTICLE V, AND SECTION 5, ARTICLE V, OF THE CONSTITUTION OF NORTH CAROLINA RELATIVE TO THE POWER OF THE GENERAL ASSEMBLY TO EXEMPT AND TO CLASSIFY PROPERTY FOR AD VALOREM TAX PURPOSES."

Section 3 of Article V, as amended in 1962, provides: "State taxation. — *The power of taxation shall be exercised in a just and equitable manner, for public purposes only, and shall never be surrendered, suspended, or contracted away. Only the General Assembly shall have the power to classify property and other subjects for taxation, which power shall be exercised only on a State-wide basis. No class or subject shall be taxed except by uniform rule, and every classification shall be uniformly applicable in every county, mu-*

*nicipality, and other local taxing unit of the State. The General Assembly's power to classify shall not be delegated, except that the General Assembly may permit the governing boards of counties, cities, and towns to classify trades and professions for local license tax purposes.* The General Assembly may also tax trades, professions, franchises, and incomes: Provided, the rate of tax on income shall not in any case exceed ten per cent (10%), and there shall be allowed the following exemptions, to be deducted from the amount of annual incomes, to wit: For a married man with a wife living with him, or to a widow or widower having minor child or children, natural or adopted, not less than $2,000; to all other persons not less than $1,000, and there may be allowed other deductions (not including living expenses) so that only net incomes are taxed."

With reference to Section 3 of Article V, the 1962 Amendment substituted the sentences italicized above for the following (deleted) three sentences: "The power of taxation shall be exercised in a just and equitable manner, and shall never be surrendered, suspended or contracted away. Taxes on property shall be uniform as to each class of property taxed. Taxes shall be levied only for public purposes, and every act levying a tax shall state the object to which it is to be applied." With reference to Section 3 of Article V, plaintiff's contentions are based upon the italicized sentences incorporated therein by the 1962 Amendment.

Section 5 of Article V, as amended in 1962, provides: "Property exempt from taxation. — Property belonging to the State, counties and municipal corporations shall be exempt from taxation. The General Assembly may exempt cemeteries and property held for educational, scientific, literary, cultural, charitable, or religious purposes, and, to a value not exceeding three hundred dollars ($300.00), any personal property. The General Assembly may exempt from taxation not exceeding one thousand dollars ($1,000.00) in value of property held and used as the place of residence of the owner. Every exemption shall be on a State-wide basis and shall be uniformly applicable in every county, municipality, and other local taxing unit of the State. No taxing authority other than the General Assembly may grant exemptions, and the General Assembly shall not delegate the powers accorded to it by this Section."

In determining whether Sections 3 and 5 of Article V as amended in 1962 are relevant to the taxes imposed by the 1967 Act, consideration must be given the factors narrated below.

It is clear that Section 5 of Article V refers solely and directly to exemptions from ad valorem taxation of property otherwise sub-

ject thereto. The fact that the 1962 Amendments to Sections 3 and 5 of Article V were submitted as Sections 1 and 2 of the 1961 Act indicates an interrelation between the subjects involved therein.

[7]     The caption (quoted above in full) of the 1961 Act declares the amendments thereby submitted relate "to the power of the General Assembly to exempt and to classify *property for ad valorem tax purposes.*" (Our italics.) This declaration in the caption is for consideration in the light of the rule stated by Clark, J. (later C.J.), in *State v. Woolard,* 119 N.C. 779, 25 S.E. 719, *viz.:* "(T)he title is part of the bill when introduced, being placed there by its author, and probably attracts more attention than any other part of the proposed law, and if it passes into law the title thereof is consequently a legislative declaration of the tenor and object of the Act. . . . Consequently, when the meaning of an act is at all doubtful, all the authorities now concur that the title should be considered." Later decisions in accord include the following: *State v. Keller,* 214 N.C. 447, 199 S.E. 620, and cases cited; *State v. Lance,* 244 N.C. 455, 94 S.E. 2d 335; *State v. Harward,* 264 N.C. 746, 142 S.E. 2d 691.

Additional light is cast upon the significance and legal effect of Sections 3 and 5 of Article V by the study and recommendations (1) of the 1957 Commission for the study of the Revenue Structure of the State, appointed pursuant to Resolution 41 of the General Assembly of 1957 (S.L. 1957, p. 1696), and (2) of the 1957 Commission to study the State Constitution and submit recommendations with reference to amendments or a revision thereof, appointed pursuant to Resolution 33 of the General Assembly of 1957 (S.L. 1957, p. 1689).

The 1957 Tax Study Commission, in explanation of its recommendations that Sections 3 and 5 of Article V be amended, set forth in its report to the Governor and General Assembly, under the caption "Policy Objectives," the following: "To make the taxes on real and tangible and intangible personal property more equitable and effective in the counties, cities, towns, and special districts of North Carolina, the Commission recommends to the legislature and local taxing authorities the following statement of policy objectives: I. The property tax base should be as broad and inclusive as possible. . . . II. The property tax base should be uniform throughout the State. . . . III. The tax base should be stable throughout the State. . . ."

The 1957 Constitutional Commission submitted with its report a "Text of Proposed Constitution for the State of North Carolina." In accordance with the recommendation of the 1957 Tax Study Com-

mission, Sections 1 and 2 of Article V of this "Text of Proposed Constitution" contained provisions which, in all respects pertinent to this appeal, are identical to Sections 3 and 5 of Article V as amended in 1962.

Recommendation No. 38 of the Constitutional Commission was as follows:

"*Property taxation.* Because the Tax Study Commission has published an exhaustive report concerning problems of property taxation, lengthy discussion of the changes proposed here seems unnecessary. The Constitutional Commission worked closely with the Tax Study Commission in redrafting Sections 3 and 5 of Article V. The recommendations concerning classification and exemption of *property* for purposes of taxation are the same as those proposed by the Tax Study Commission.

"Briefly, however, the intent of the changes is to insure that the same class *of property* shall occupy the same status as a part of *the property tax base* in every county of the State. The General Assembly is required to make every classification by uniform rule, uniformly applicable in every county, municipality, and other local taxing unit of the State. In addition, the General Assembly is forbidden to delegate its power of classification, except that it may delegate to counties, cities, and towns the power to classify trades and professions for local license tax purposes.

"Similar restrictions have been placed upon exemption of *property* from taxation. Every exemption must be on a state-wide basis by uniform rule, uniformly applicable in every local taxing unit of the State. It is also provided that no taxing authority other than the General Assembly may exempt *property;* nor can the General Assembly delegate its power of exemption.

"It should be emphasized that the requirement of uniformity in classification does not prohibit fixing of basic tax *rates* by local units in accordance with their individual needs, but it does seek to insure that *the tax base* will be uniform throughout the State. Also, it should be pointed out that the changes recommended in these sections do not represent a change in the traditional concept of *property taxation* in North Carolina. The idea of uniformity is expressed in the present Constitution, and the recommendations are merely directed toward tightening the provisions of the Constitution relating to property taxation in an effort to assure uniformity of classification and exemption." (Our italics.)

Further quotation from the report of the 1957 Tax Study Com-

mission and of the 1957 Constitutional Commission are deemed unnecessary. Suffice to say, Sections 3 and 5 of Article V, as amended in 1962, now embody the recommended constitutional changes. It is quite evident that these constitutional provisions relate solely to uniformity, determinable by the General Assembly on a State-wide basis, as *to what property* is to be included in or excluded or exempted from *the property tax base* on which local ad valorem taxes may be imposed.

We have not overlooked the fact that Section 3 of Article V, as amended in 1962, provides: "Only the General Assembly shall have the power to classify property *and other subjects* for taxation," etc. (Our italics.) Possibly the additional phrase, "and other subjects," was included to dispel any doubt the provisions referred to "intangibles" as well as to real property and tangible personal property. In any event, this phraseology originated with the 1957 Tax Study Commission and was brought forward by the 1957 Constitutional Commission; and for the reasons stated above it seems inescapable the reference is to such "property and other subjects" as might be included in the property tax base on which local ad valorem taxes might be imposed.

[1] We are of opinion, and so decide, that the *constitutional limitations* set forth in Sections 3 and 5 of Article V relate solely to the taxation of real and personal property, tangible and intangible, according to the value thereof, and are irrelevant in respect of the validity of the sales tax and use tax imposed by the 1967 Act.

On this appeal, in passing upon the only question presented, we hold the 1967 Act is not void as violative of Sections 3 and 5 of Article V of our Constitution. Whether the 1967 Act, or any portion thereof, is *vulnerable to attack as violative* of other constitutional limitations is not presented.

[8] Plaintiff's contention that the General Assembly by enactment of the 1967 Act surrendered its power of taxation to the voters of Mecklenburg County is without merit. The only tax involved is the specific tax defined in the 1967 Act. The 1967 Act imposes this tax if and when imposition thereof is approved by a majority of those voting in the special election. The power to tax was exercised by the General Assembly.

On the ground and for the reasons stated, the judgment of Judge Ervin is affirmed.

Affirmed.