HELEN C. PRESTON v. BENJAMIN THOMPSON

No. 8021SC1189

(Filed 4 August 1981)

1. **Physicians, Surgeons and Allied Professions § 11.2— results of treatment guaranteed—writing required**

   A dentist, while generally not an insurer of results, may enlarge his responsibility to the patient and contract to fulfill specific assurances, but such assurances must be in writing to be enforceable. G.S. 90-21.13(d).

2. **Physicians, Surgeons and Allied Professions § 11.2; Uniform Commercial Code § 6— dentist not merchant—dentures not goods**

   Defendant's providing of dentures for plaintiff did not constitute a sale of goods within the meaning of G.S. 25-2-105 and defendant dentist was not a merchant within the meaning of G.S. 25-2-104(1), and the transaction between the parties was thus not covered by an implied warranty under G.S. 25-2-315.

APPEAL by plaintiff from *Lupton, Judge.* Judgment entered 9 September 1980 in Superior Court, FORSYTH County. Heard in the Court of Appeals 28 May 1981.

Plaintiff, Helen Preston, instituted this action alleging breach by defendant, Benjamin Thompson, a dentist, of express and implied warranties and guarantees as to a set of dentures furnished to Mrs. Preston by Dr. Thompson.

On or about 15 August 1978 Mrs. Preston consulted with Dr. Thompson about obtaining a new set of dentures. She had previously determined through a listing in the yellow pages that Dr. Thompson was a specialist who limited his practice to preparing and fitting dentures. Mrs. Preston told Dr. Thompson that she had problems with the dentures she was using and wanted a new set which would be satisfactory to her and would enable her to eat. In her deposition, Mrs. Preston testified that Dr. Thompson

made oral assurances to her that he could make dentures that would fit to her satisfaction, stating, among other things, "I don't see any reason why we couldn't make you a set of teeth that would fit." Dr. Thompson denied making such assurances to Mrs. Preston. Rather, he contended that he fully explained the difficulties and problems that would be involved in her treatment, and that Mrs. Preston understood and consented to his proceeding with professional services.

Mrs. Preston paid Dr. Thompson $750, the price upon which they had agreed. She returned to Dr. Thompson's office on six occasions for impressions and preliminary measurements to be made. She received the set of dentures on 20 October 1978.

Mrs. Preston experienced no problems with the upper set of dentures, but had pain and trouble eating because of the lower set. She continued treatment on a regular basis until May 1979, during which time Dr. Thompson made numerous adjustments to the lower dentures. Mrs. Preston claims one tooth became chipped and was never repaired. In his answer to plaintiff's interrogatories, Dr. Thompson stated he felt great progress had been made in Mrs. Preston's treatment and he was willing to continue working with her indefinitely, but she refused to continue.

After discovery, defendant moved for summary judgment and plaintiff moved for partial summary judgment as to the affirmative defenses of the statute of frauds under N.C.G.S. 90-21.13(d) and 25-2-201. Defendant was granted summary judgment in his favor; plaintiff's motion was denied and she appeals.

*Billings, Burns & Wells, by R. Michael Wells, for plaintiff appellant.*

*Petree, Stockton, Robinson, Vaughn, Glaze & Maready, by F. Joseph Treacy, Jr., for defendant appellee.*

MARTIN (Harry C.), Judge.

[1] Plaintiff first argues that a dentist, while generally not an insurer of results, may enlarge his responsibility to the patient and contract to fulfill specific assurances. Although we find no cases in North Carolina addressing this issue, we have no quarrel with this proposition. *See* Annot., 43 A.L.R. 3d 1221 (1972 and 1980 Supp.). Our General Assembly, in enacting Article 1B of Chapter

90 of the General Statutes of North Carolina, apparently considered this very issue. N.C.G.S. 90-21.13(d) provides:

> No action may be maintained against any health care provider upon any guarantee, warranty or assurance as to the result of any medical, surgical or diagnostic procedure or treatment unless the guarantee, warranty or assurance, or some note or memorandum thereof, shall be in writing and signed by the provider or by some other person authorized to act for or on behalf of such provider.

A dentist is specifically included under the term "health care provider." N.C. Gen. Stat. 90-21.11.

Plaintiff contends that N.C.G.S. 90-21.13 is not relevant, as a matter of law, to the instant case. She relies on the caption of the section, "Informed consent to health care treatment or procedure," and the title of the article, "Medical Malpractice Actions," emphasizing that the act deals with malpractice or negligence actions, not an action brought on a theory of contract. She further relies upon the fact that all cases citing N.C.G.S. 90-21.12, which sets the standard of health care, have been brought upon malpractice theories. *Tatham v. Hoke*, 469 F. Supp. 914 (W.D. N.C. 1979); *Page v. Hospital*, 49 N.C. App. 533, 272 S.E. 2d 8 (1980); *Tripp v. Pate*, 49 N.C. App. 329, 271 S.E. 2d 407 (1980); *Hart v. Warren*, 46 N.C. App. 672, 266 S.E. 2d 53, *disc. rev. denied*, 301 N.C. 89 (1980); *Vassey v. Burch*, 45 N.C. App. 222, 262 S.E. 2d 865, *rev'd*, 301 N.C. 68 (1980); *Thompson v. Lockert*, 34 N.C. App. 1, 237 S.E. 2d 259, *disc. rev. denied*, 293 N.C. 593 (1977). N.C.G.S. 90-21.13, the statute here in question, has not been cited previously.

It is true, as plaintiff urges, that when the meaning of a statute is in doubt, reference may be made to the title and context of an act to determine the legislative purpose. *Sykes v. Clayton, Comr. of Revenue*, 274 N.C. 398, 163 S.E. 2d 775 (1968). However, the title of a statute does not control over the text, but may be considered only when the meaning of language of the statute is doubtful. *Blowing Rock v. Gregorie*, 243 N.C. 364, 90 S.E. 2d 898 (1956). Where it is clear and unambiguous, the courts must give the language its plain and definite meaning and may not interpolate or superimpose provisions and limitations not contained therein. 12 Strong's N.C. Index 3d Statutes § 5.5 (1978).

The statute here in question plainly mandates that "[n]o action may be maintained against any health care provider upon *any* guarantee, warranty or assurance as to the result of any medical, surgical or diagnostic procedure or treatment *unless the guarantee, warranty or assurance, or some note or memorandum thereof, shall be in writing and signed . . . ."* N.C. Gen. Stat. 90-21.13(d) (emphasis ours). We perceive the statute was intended to apply to circumstances precisely like that which plaintiff alleges. The statute clearly and unequivocally relates to an agreement, a contract, between the health care provider and the patient to achieve a definite result.

Contrary to plaintiff's contention, the recent case of *Flippin v. Jarrell,* 301 N.C. 108, 270 S.E. 2d 482 (1980), does not control the case sub judice. In *Flippin,* the Supreme Court considered a new statute of limitations for malpractice actions, N.C.G.S. 1-15(c), effective 1 January 1977, and held it was unconstitutional to apply it to bar the plaintiff's claim. Plaintiff cites the language of *Flippin,* 301 N.C. at 118, 270 S.E. 2d at 488, that the section "deals exclusively with medical malpractice actions," as conclusive authority that N.C.G.S. 90-21.13 does not apply to an action brought under a theory of contract or warranty. Plaintiff conveniently overlooks the preceding sentence, however, reading: "As implied in its title, *the act is far ranging in scope; its various provisions deal with several aspects of professional malpractice." Id.* (emphasis ours). Because the statute plainly encompasses the type of action in the present case, plaintiff cannot remove her action from its effect nor change the essence of her claim by labeling it an action of a different name.

The reasons for this statutory requirement are clear. Every patient certainly enters health care treatment (including dental treatment) with hopes and expectations of satisfactory results. Because of the uncertainty inherently involved in a course of treatment, due largely to personal physical and emotional idiosyncrasies of the individual patient, it would generally be imprudent for the health care provider to guarantee a definite result. A patient understandably may be disappointed when his expectations are not fulfilled or his condition fails to improve, and seek recourse against the provider, despite the fact that every effort was expended to obtain the desired results. The legislature wisely foresaw the likelihood that these disappointed patients might

believe they had been promised specific results, and chose to require that any suit based upon such claims must be supported by written assurances. Similar statutes of frauds as a safeguard to claims regarding certain transactions have long been part of our law. *See* N.C. Gen. Stat. 25-2-201 (sales of goods); 22-2 (transactions involving real property). Plaintiff's action is based solely upon allegations of *oral* assurances. Defendant posed the following interrogatory:

> Do you contend that the defendant provided you with any written guaranty, warranty or assurance relative to your dentures, their fit or your treatment or any written note, memorandum of such guaranty, warranty or assurance that was signed by the defendant?

Plaintiff answered: "No, but Plaintiff contends that oral statements were made." N.C.G.S. 90-21.13(d) controls, and, by her own admissions, plaintiff's claim does not fall within the mandate of the statute.

Nor is there any merit to plaintiff's contention that application of the statute to her case would violate the equal protection clause of the Fourteenth Amendment of the United States Constitution. She argues that the statute is arbitrary and capricious, with no rational basis, as other professional groups are not afforded such protection. We cannot agree. The reasons previously discussed provide a rational basis for the statute. The legitimate concerns regarding suits involving the dispensing of health care were succinctly articulated in *DiAntonio v. Northampton-Accomack Memorial,* 628 F. 2d 287, 291 (4th Cir. 1980) (upholding the constitutionality of the Virginia Medical Malpractice Act):

> The elimination of frivolous claims and the provision and promotion of mediation and settlement provide a rational basis for the legislation. The different treatment of medical malpractice plaintiffs from other tort plaintiffs is not a denial of equal protection, when the special problems posed by soaring insurance costs are considered.

The language of the Illinois appellate court is also instructive:

> "The application of the ordinary rules dealing with mercantile contracts to a contract entered into between a physician and a patient in our opinion is not justified. The relationship

is a peculiar relationship inasmuch as the physician cannot, and should not, so terrify the patient by pointing out to him the manifold dangers which are present at any time the slightest surgical operation is performed. To do so might produce a psychic reaction which would seriously retard the success of the physician's treatment." . . . Therefore the courts which have recognized an action based upon the express warranty of a physician to effect a particular cure have distinguished between so-called therapeutic reassurances that the patient will recover and express promises that treatment will produce a specific result and have stated that it is doubtful that an action for breach of warranty can ever result from a physician's expression of opinion.

*Rogala v. Silva*, 16 Ill. App. 3d 63, 66-67, 305 N.E. 2d 571, 574 (1973) (citations omitted). We hold that application of N.C.G.S. 90-21.13(d) does not violate plaintiff's constitutional rights.

[2] Plaintiff may not avoid the effect of the statute by stating a cause of action under the Uniform Commercial Code, alleging that the transaction constituted a sale of "goods," N.C.G.S. 25-2-105, by a "merchant," N.C.G.S. 25-2-104(1), and is thus covered by an implied warranty under N.C.G.S. 25-2-315. She attempts to distinguish *Batiste v. Home Products Corp.*, 32 N.C. App. 1, 231 S.E. 2d 269, *disc. rev. denied*, 292 N.C. 466 (1977), in which this Court held that a physician's issuance of a prescription for an oral contraceptive drug did not constitute a sale of the drug within the meaning of the U.C.C. While we acknowledge that *Batiste* is factually distinguishable, we find the legal principles there enunciated apply to the present case. There the Court stated:

> While plaintiff's argument may be ingenuous, it is not, in our opinion, either factually or legally sound. The Uniform Commercial Code was designed to apply to transactions between a seller and a purchaser. Inherent in the legislation is the recognition that the essence of the transaction between the retail seller and the consumer relates to the article sold, and that the seller is in the business of supplying the product to the consumer. *It is the product and that alone for which he is paid.* The physician offers his professional services and skill. It is his professional services and his skill for which he is paid, and they are the essence of the relationship between him and his patient. . . .

The fact remains that one does not normally go to a physician to purchase medicines or drugs or bandages or other items incidental to medical treatment. . . .

We adhere to the general and majority rule that those who, for a fee, furnish their professional medical services for the guidance and assistance of others are not liable in the absence of negligence or intentional misconduct.

*Id.* at 6-7, 231 S.E. 2d at 272-73 (emphasis ours).

Other courts have similarly held that a physician is neither a merchant nor a seller of goods under the U.C.C. *See Allen v. Ortho Pharmaceutical Corp.*, 387 F. Supp. 364 (S.D. Tex. 1974); *Foster v. Memorial Hosp. Ass'n of Charleston*, 219 S.E. 2d 916 (W. Va. 1975). Analogously, North Carolina, like most other states, has enacted a statute exempting the distribution or use of blood or other human tissues incident to a transfusion or transplantation from the definition of a sale and the applicability of warranties. N.C. Gen. Stat. 90-220.10.

Plaintiff earnestly argues in her brief that she "went to defendant appellee Thompson for the purchase of dentures," the sale of which was the "essence of the transaction." She contends that because she did not want to go to a "regular" dentist, but sought out a specialist and informed him of her reason for consulting him, the transaction became one for the sale of goods. Plaintiff's position is untenable. Another Illinois case, *Carroll v. Grabavoy*, 77 Ill. App. 3d 895, 396 N.E. 2d 836 (1979), addressed an almost identical claim. There the plaintiff brought an action against her dentist based upon the breach of express and implied warranties that the dentures she received from him would be attractive, would fit well, and would be pleasing to her. The court held that the rendering of dental services in connection with a set of dentures was not a sale of goods as defined by the U.C.C.

The fact that defendant holds himself out as specializing in the preparing and fitting of dentures does not remove him from the practice of dentistry and transform him into a merchant. If anything, his specialty practice indicates a higher degree of skill and training in the treatment of patients requiring dental prosthetics. Plaintiff in no way implies that defendant merely dispensed a set of dentures upon her request; instead her deposi-

tion testimony and her affidavit, as well as defendant's evidence, clearly indicate a protracted course of *treatment*, with numerous adjustments and fittings. Without a doubt, plaintiff paid for and received a course of health care treatment and services, not merely a piece of merchandise. Furthermore, we note that the record indicates defendant was cooperating with plaintiff and was continuing her treatment. He felt progress was being made, and plaintiff decided to terminate the relationship.

We hold that the trial court did not err in granting summary judgment in favor of defendant.

Affirmed.

Judges HEDRICK and WELLS concur.