IN THE COURT OF APPEALS OF NORTH CAROLINA

No. COA14-1399

Filed: 5 January 2016

Property Tax Commission, No. 12 PTC 581

IN THE MATTER OF: THE APPEAL OF: FLS OWNER II, LLC from the decision of the Randolph County Board of Equalization and Review regarding the valuation of certain property for tax year 2011.

Appeal by FLS Owner II, LLC from final decision entered 15 September 2014 by the North Carolina Property Tax Commission. Heard in the Court of Appeals 6 May 2015.

*Turrentine Law Firm, PLLC, by S.C. Kitchen, for Taxpayer-Appellant.*

*Shelley T. Eason, for Randolph County-Appellee.*

CALABRIA, Judge.

Taxpayer, FLS Owner II, LLC ("FLS"), appeals from a final decision of the North Carolina Property Tax Commission ("the Commission") affirming the appraisal of FLS's solar heating system by Randolph County ("the County") for *ad valorem* tax purposes. We reverse the decision of the Commission and remand.

## I. Background

FLS purchased an industrial solar heating system ("the system") for $1,700,000 from its parent company, FLS Energy, Inc., on 15 August 2010. FLS then leased the system for use in a manufacturing facility ("the facility") in Asheboro. The system was designed specifically for, and was installed directly onto, the facility. It

consists of two hundred solar panels, two heat exchangers, piping inside and outside of the facility, and two 10,000-gallon storage tanks, as well as "sleeves, bracers, and connectors associated with the system." The system produces hot water solely for the facility's industrial manufacturing processes.

According to stipulations by both parties, the County discovered the system in 2011 and initially appraised it at "a value of $571,000 based on [ ] an original cost of $635,000 [as] shown on the building permit." "The [C]ounty amended [its appraisal] in November of 2011 to show a value of $1,056,917 based on a press release from the North Carolina Governor's Office showing the original cost for the [system] to be $1,174,352."

FLS contested the County's appraisal, and a hearing was held before the Commission on 13 May 2014 ("the hearing"). During the hearing, Howard Blair Kincer ("Mr. Kincer") testified for FLS as an expert in the "appraisal of solar energy equipment and systems." Mr. Kincer testified, in part, that under a "cost comparison approach[,]" the value of the system was $56,000, because that was how much it would cost to replace the system with an equivalent conventional heating system. As a result, the County's appraisal of the system almost nineteen times larger than Mr. Kincer's appraisal. The County maintained that it correctly appraised the system based on the cost of replacing it with another solar heating system. At the close of FLS's evidence, the County moved to dismiss the case. On 15 September 2014, the

Commission entered a final decision ("the decision") which dismissed the case and affirmed the County's valuation of the system at $1,056,917. FLS appeals.

## II. Standard of Review

The North Carolina Supreme Court has outlined the standard of review for appeals from final decisions of the Commission as follows:

> We review decisions of the Commission pursuant to [N.C. Gen. Stat.] § 105-345.2 [(2013)]. Questions of law receive *de novo* review, while issues such as sufficiency of the evidence to support the Commission's decision are reviewed under the whole-record test. Under a *de novo* review, the court considers the matter anew and freely substitutes its own judgment for that of the Commission. Under the whole-record test, however, the reviewing court merely determines whether an administrative decision has a rational basis in the evidence.

*In re Appeal of Greens of Pine Glen Ltd.*, 356 N.C. 642, 646–47, 576 S.E.2d 316, 319 (2003) (citations and internal quotation marks omitted). Because this appeal presents a dispositive issue of statutory construction, we conduct a *de novo* review.

## III. Analysis

FLS challenges the decision of the Commission to affirm the County's appraisal of the system for *ad valorem* tax purposes. "*Ad valorem* tax assessments are presumed to be correct." *Id.* at 647, 576 S.E.2d at 319.

> However, a taxpayer may rebut this presumption if it produces competent, material and substantial evidence establishing that: (1) Either the county tax supervisor used an *arbitrary method* of valuation; or (2) the county tax supervisor used an *illegal method* of valuation; AND (3) the

> assessment *substantially* exceeded the true value in money
> of the property.

*Id.* This is a "two-prong test[.]" *Id.* However, "[i]n attempting to rebut the presumption of correctness, the burden upon the aggrieved taxpayer is one of *production* and not persuasion." *In re Blue Ridge Mall LLC*, 214 N.C. App. 263, 267, 713 S.E.2d 779, 782 (2011) (emphasis added) (citation and internal quotation marks omitted). "Once a taxpayer produces sufficient evidence to rebut the presumption, the burden shifts to the taxing authority to show that its methods [do] in fact produce true values[.]" *In re IBM Credit Corp.*, 201 N.C. App. 343, 345, 689 S.E.2d 487, 489 (2009) (citation and internal quotation marks omitted).

## A.  Classification of Property

As a preliminary matter, we note that the County appraised FLS's system as "personal property" under N.C. Gen. Stat. § 105-317.1 (2013). Neither party disputes this classification. Since FLS's appeal turns almost entirely on determining the correct "replacement cost" of the system, the County would have had to consider this "replacement cost" while conducting its appraisal, regardless of whether the system was properly classified as real or personal property. *See* N.C. Gen. Stat. §§ 105-317(a)(2), -317.1(a) (respectively).

## B.  Application of N.C. Gen. Stat. § 105-277(g)

FLS contends the County used an arbitrary or illegal method to appraise the value of the system and that this appraised value "substantially exceeded" the

system's "true value" as defined by North Carolina's Tax Code. *See* N.C. Gen. Stat. §§ 105-277(g) (requiring that buildings equipped with solar heating or cooling systems be "assessed for taxation in accordance with each county's schedule of values for buildings equipped with conventional heating or cooling systems") 283 (2013) (stating that all property must be "valued at its true value in money"). Specifically, FLS argues the County erred by appraising the system based upon the "reproduction cost" of the system. Under this method, the County reached it appraisal by determining the "replacement cost" of constructing another, identical solar heating system. FLS contends subsection 105-277(g) required the County to appraise the system based on the "replacement cost" of an equivalent conventional heating system. FLS also argues the Commission erred by concluding as a matter of law that subsection 105-277(g) was not applicable to the present case in affirming the County's appraisal. The interpretation of subsection 105-277(g) is a matter of first impression for this Court, and we agree with FLS.

Subsection 105-277(g) provides that

> [b]uildings equipped with a solar energy heating or cooling system, or both, are hereby designated a special class of property under authority of Article V, Sec. 2(2) of the North Carolina Constitution. Such buildings shall be assessed for taxation *in accordance with each county's schedules of value for buildings equipped with conventional heating or cooling systems* and no additional value shall be assigned for the difference in cost between a solar energy heating or cooling system and a conventional system typically found in the county. As used in this classification, the term

"system" includes all controls, tanks, pumps, heat exchangers and other equipment used directly and exclusively for the conversion of solar energy for heating or cooling. The term "system" does not include any land or structural elements of the building such as walls and roofs nor other equipment ordinarily contained in the structure.

N.C. Gen. Stat. § 105-277(g) (emphasis added). It is well settled that

[t]he principal goal of statutory construction is to accomplish the legislative intent. The intent of the General Assembly may be found first from the plain language of the statute, then from the legislative history, the spirit of the act and what the act seeks to accomplish. If the language of a statute is clear, the court must implement the statute according to the plain meaning of its terms so long as it is reasonable to do so. When the statute under consideration is one concerning taxation, special canons of statutory construction apply. If a taxing statute is susceptible to two constructions, any uncertainty in the statute or legislative intent should be resolved in favor of the taxpayer.

*Lenox, Inc. v. Tolson*, 353 N.C. 659, 664, 548 S.E.2d 513, 517 (2001) (citations and internal quotation marks omitted). For the following reasons, we conclude the statute is susceptible to competing reasonable constructions.

Subsection 105-277(g) specifically provides that "[b]*uildings* equipped with a solar energy heating or cooling system . . . are hereby designated a special class of property" and sets forth the manner in which "[s]uch *buildings* shall be assessed for taxation[.]" N.C. Gen. Stat. § 105-277(g) (emphasis added). According to the County, this language necessarily means that "the statute's financial benefit goes to the building, not to the solar heating and cooling system itself[.]" The essence of this argument is that subsection 105-277(g) serves a very limited purpose: installation of

(usually very expensive) solar equipment increases the value of the building to which it is attached. This increase in value subjects the building's owner to greater *ad valorem* tax liability. The County contends when a building is equipped with a solar heating or cooling system, it must be assessed for taxation without regard to the increased value of the real property due to the installation of such a system.

Even so, as FLS argues in its brief, the remainder of subsection 105-277(g) defines solar energy heating and cooling systems as entirely distinct from the buildings to which they are attached. *See* N.C. Gen. Stat. § 105-277(g) ("[T]he term 'system' includes all controls, tanks, pumps, heat exchangers and other equipment *used directly and exclusively* for the conversion of solar energy for heating or cooling . . . [and] *does not include any land or structural elements of the building* such as walls and roofs nor other equipment ordinarily contained in the structure." (emphasis added)).

The explicit mention of system components provides one explanation of the legislation's scope. In particular, the specific identification of these components categorizes what hardware qualifies for subsection 105-277(g)'s tax benefit, and the language excluding "structural elements of the building" categorizes what hardware is not within the legislation's reach. *See* John H. Minan & William H. Lawrence, *State Tax Incentives to Promote the Use of Solar Energy*, 56 Tex. L. Rev. 835, 842 (1978) ("Specific identification of system components that qualify for tax relief aids

the precision and clarity of [solar tax relief] legislation. Including 'all controls, tanks, pumps, heat exchangers, and other hardware necessary to effect installation' within the reach of the tax incentive is an illustration of this approach. A corollary approach is to specify investments outside the ambit of the legislation. An example of this technique is the specific exclusion of walls and roofs unless they are integral parts of the system, specially designed to provide additional heating or cooling.").

Yet the statute also provides that "no additional value shall be assigned for the *difference in cost between a solar energy heating or cooling system and a conventional system*[,]" N.C. Gen. Stat. § 105-277(g) (emphasis added), which FLS argues is a value that effectively has nothing to do with a building as a distinct property. Consequently, subsection 105-277(g) could be interpreted to mean that the General Assembly intended for this subsection to apply specifically to the appraisal of solar heating and cooling systems that are attached to buildings, and not to buildings alone.

This interpretation is bolstered by the Act's title. When, as here, "the meaning of a statute is in doubt, reference may be made to the title and context of an act to determine the legislative purpose." *Preston v. Thompson*, 53 N.C. App. 290, 292, 280 S.E.2d 780, 782 (1981); *see also Sykes v. Clayton*, 274 N.C. 398, 406, 163 S.E.2d 775, 781 (1968) (title of a bill is "a legislative declaration of the tenor and object of the act"). 1977 Sess. Laws ch, 965, which enacted subsection 105-277(g), was specifically

entitled "An Act to Classify *Solar Energy Systems* for Ad Valorem Tax Purposes." (emphasis added). The Act's title, when read in conjunction with subsection 105-277(g)'s language, clearly shows that solar energy systems are, at least in part, a discrete class of property at which the legislation is aimed.

All told, we do not believe the General Assembly intended to preclude subsection 105-277(g) from applying in the instant case. As noted above, to the extent that subsection 105-277(g) "is susceptible to two constructions, any uncertainty in the statute or legislative intent should be resolved in favor of" FLS. *Lenox*, 353 N.C. at 664, 548 S.E.2d at 517. We are also unable to resolve the practical ramifications of the County's position on appeal. Specifically, the County argues that FLS should not benefit from the appraisal restrictions in subsection 105-277(g) because "[t]he statute's financial benefit goes to the building, not to the solar heating and cooling equipment itself[.]"

This interpretation of subsection 105-277(g) would allow functionally identical properties to be taxed at radically different rates, depending on whether the building and the solar heating system were owned by the same individual. According to the County's position, the owner of a solar heating system located on a plot of land it did not own would be unable to benefit from subsection 105-277(g)'s appraisal restrictions. Thus, if "[t]he statute's financial benefit [really did go] to the building," a building-owner who did not own the building's solar heating system would recoup

a windfall tax break for property it did not own. Yet the owner of the solar heating unit would have to pay taxes on its system as if it were nineteen times more valuable than an identical system next door, which happened to be owned by the same individual who owns the building.

The County's argument regarding subsection 105-277(g)'s application to this case turns on the ownership of either the system or the facility—if FLS owned the facility, or if the facility owned the system, we would not be here. We do not believe the General Assembly intended such a disparate, disjointed application of the State's Tax Code, which requires that there be "[u]niform appraisal standards" for assessing *ad valorem* taxes within a given class of properties. N.C. Gen. Stat. § 105-283. Indeed, the "application of two distinct valuation methodologies to properties in the same class which results in systematic discrimination against one group of property owners is a clear violation of uniformity." *In re Appeal of Winston-Salem Joint Venture*, 144 N.C. App. 706, 713–14, 551 S.E.2d 450, 455 (2001) (citing *Allegheny Pitts. v. Webster County,* 488 U.S. 336, 345, 102 L.Ed.2d 688, 698 (1989)). As the County aptly points out in its brief, "statutes such as [subsection 105-277(g)] describe a particular *class* of property for [partial] exclusion from the tax base rather than providing an exemption for its *owner*." (emphasis added). *See In re Appeal of Springmoor, Inc.,* 348 N.C. 1, 9, 498 S.E.2d 177, 182 (1998) ("[Tax exemption statutes] must bear a substantial relation to the object of the legislation, so that all persons

similarly circumstanced shall be treated alike." (citations and internal quotation marks omitted)). Accordingly, for the purpose of assessing *ad valorem* taxes under North Carolina's Tax Code, N.C. Gen. Stat. §§ 105-317(a)(2), -317.1(a), solar heating and cooling systems are to be appraised with "no additional value . . . assigned for the difference in cost between a solar energy heating or cooling system and a conventional system typically found in the county." N.C. Gen. Stat. § 105-277(g).[1]

Here, the County appraised FLS's system as business personal property. Section 105-317.1 sets forth specific factors the County was required to use in its appraisal of the system. The County failed to employ any of these factors, but instead relied on a press release from then-Governor Beverly Perdue's website which listed the property at $1,174,352. Significantly, the record does not reveal the origin of this value.

After applying trending schedules promulgated by the North Carolina Department of Revenue, the County arrived at its valuation figure of $1,056,917.

---

[1] The County also seems to imply in its brief that FLS's solar heating system is not a "solar energy heating or cooling system" for the purposes of subsection 105-277(g) because FLS's solar heating system creates hot water for industrial processes and "does not provide heating or cooling for [the facility's] employees or officers in bathrooms, kitchens, or other interior areas of the [f]acility." We find no basis for this distinction in the language of subsection 105-277(g), and we note that other parts of North Carolina's Tax Code take an expansive view of what constitutes a solar heating or cooling system. *See* N.C. Gen. Stat. § 105-129.15 (2013) ("Solar energy equipment [is equipment] that uses solar radiation as a substitute for traditional energy for *water heating*, active space heating and cooling, passive heating, daylighting, generating electricity, distillation, desalination, detoxification, or the *production of industrial or commercial process heat*. The term also includes related devices necessary for collecting, storing, exchanging, conditioning, or converting solar energy to other useful forms of energy." (emphasis added)).

This Court has previously rejected the use of historical cost in conjunction with trending tables to value specialty equipment for purposes of property tax. *See IBM Credit Corp.*, 201 N.C. App. at 351-52, 689 S.E.2d at 493 (reasoning that using historical cost and applying trending factors to computer equipment misses "a critical step in the appraisal analysis, particularly when technological improvements in the equipment being trended . . . may have all the utility of the machine being appraised but sell for less money than the subject machine cost several years previous").

The County's valuation of the property also failed to consider the tax credits for the system, which were "used up" once the system was constructed. As a result, the County's valuation taxed FLS for a value that was no longer present in the system.

## IV. Conclusion

In sum, the County used a press release from Governor Perdue's website to determine the system's value, failed to follow statutory guidelines for appraisal, and did not "consider the obsolescence of the equipment due to the equipment being overbuilt, the income produced by the equipment, and [the] transfer of tax credits prior to valuation[.]" FLS has therefore met its burden of production by producing evidence that the County used an arbitrary or illegal method of appraising the value of the solar heating system. *See Greens of Pine Glen*, 356 N.C. at 647, 576 S.E.2d at 319. And since expert testimony established that the County's appraised value of the solar heating system was approximately nineteen times greater than the value of an

equivalent conventional heating system, FLS has also met its burden of production by producing evidence that the County's appraisal "*substantially* exceeded the true value in money of the property," *id.*, as that value is defined by North Carolina's Tax Code. *See* N.C. Gen. Stat. §§ 105-277(g), -283. Accordingly, we reverse the final decision of the Commission and remand for further proceedings consistent with this opinion. Given our disposition of this case, we need not consider the other arguments raised by FLS on appeal.

REVERSED AND REMANDED.

Judges STROUD and TYSON concur.