IN THE COURT OF APPEALS OF NORTH CAROLINA

No. COA22-699

Filed 19 March 2024

Currituck County, No. 19-CVS-171

GERALD COSTANZO, et al., Plaintiffs,

v.

CURRITUCK COUNTY, NORTH CAROLINA, et al., Defendants.

Appeal by plaintiffs from order entered 28 December 2021 by Judge Wayland J. Sermons, Jr. in Currituck County Superior Court. Heard in the Court of Appeals 8 February 2023.

> *Fox Rothschild L.L.P., by Troy D. Shelton and Robert H. Edmunds, Jr., for the plaintiffs-appellants.*
>
> *Womble Bond Dickinson (US) L.L.P., by Christopher J. Geis, for the defendants-appellees.*

STADING, Judge.

Gerald Costanzo, et al., ("plaintiffs") appeal an order granting summary judgment for Currituck County, et al., ("the County"). For the reasons set forth below, we reverse the order in part, vacate in part, and remand for further proceedings.

## I. Background

Currituck County is North Carolina's northernmost coastal county containing a strip of land that is part of the Outer Banks. The town of Corolla, situated on this strip of land, is a tourist destination. This area generates most of the County's

occupancy tax revenue from lodging facilities. Although comprising approximately one-tenth of the County's land, this area also contributes to more than half of the County's property tax base. The property tax, sales tax, and other tax revenue generated in this area feeds into the County's General Fund allocated for public purposes throughout the County under N.C. Gen. Stat. §§ 153A-149, 153A-151, and 105-113.82 (2023).

In 1987, the General Assembly gave the County authority to collect an occupancy tax on rentals of rooms and other lodgings ("the Session Law"). *See* 1987 N.C. Sess. Laws 209, § 1(a). The Session Law required that "at least seventy-five percent (75%) of the net proceeds" of the occupancy tax levied be used "only for tourist related purposes, including construction and maintenance of public facilities and buildings, garbage, refuse, and solid waste collection and disposal, police protection, and emergency services." N.C. Sess. Law 1987, Chapter 209, H.B. 555, § 1(e). The County then had to deposit the remaining net proceeds of the occupancy tax into its General Fund, which could "be used for any lawful purpose." *Id.* In 1999, the Session Law was modified, and the County was permitted to levy an "[a]dditional occupancy tax" under its subsection 1(a1). N.C. Sess. Law 1999-155, H.B. 665 § 1(a1). The County could use the net proceeds of taxes levied under this subsection for the Currituck Wildlife Museum. N.C. Sess. Law 1999-155, H.B. 665 § 1(a1); N.C. Sess. Law 2004-95, H.B. 1721 § 2(e).

In 2004, the General Assembly amended the Session Law ("the Amendment"), narrowing the scope of how the County may use occupancy tax proceeds. N.C. Sess. Law 2004-95, H.B. 1721 § 2(e). In contrast to the Session Law, the Amendment deleted the phrase "tourist related purposes," opting instead for "tourism-related expenditures, including beach nourishment." N.C. Sess. Law 1987, Chapter 209, H.B. 555, § 1(e); N.C. Sess. Law 2004-95, H.B. 1721 §§ 1(a2), 2(e). Moreover, the Amendment removed the language that authorized the County to make certain expenditures, "including construction and maintenance of public facilities and buildings, garbage, refuse, and solid waste collection and disposal, police protection, and emergency services." N.C. Sess. Law 1987, Chapter 209, H.B. 555, § 1(e); N.C. Sess. Law 2004-95, H.B. 1721 § 2(e).

Even so, after the Amendment's enactment, the County continued to allocate occupancy tax revenue to expenditures previously authorized under the Session Law. The County's continued allocation of these funds, in a manner not specifically authorized by the Amendment, prompted plaintiffs to file their complaint on 7 May 2019, suing for declaratory judgment and injunctive relief. Plaintiffs alleged that defendants "improperly and unlawfully diverted [tax levies] to purposes other than those purposes permitted by the [Amendment]." Specifically, plaintiffs sought relief as follows: (1) declaratory judgment that transfers of occupancy tax proceeds from the designated tourism development fund to the County's General Fund are unlawful, (2) declaratory judgment that the County's expenditures of occupancy tax proceeds for

public safety services are unlawful, (3) declaratory judgment that the County's expenditures of occupancy tax proceeds for non-promotional operations and activities of the County's Economic Development Department are unlawful, (4) declaratory judgment that the County's expenditures of occupancy tax proceeds for two ongoing projects—park facility construction and historic building restoration—are unlawful, (5) declaratory judgment that the County's loan of occupancy tax proceeds to finance the construction of a water treatment facility is unlawful, (6) declaratory judgment that the County's expenditures of occupancy tax proceeds to fund special service districts are unlawful, (7) declaratory judgment that the aforementioned claims violate the Amendment and N.C. Gen. Stat. § 159.13(b)(4) (2023), which prohibits expenditures of revenue for purposes not permitted by law, (8) declaratory judgment that the County's use of occupancy tax proceeds violates the North Carolina Constitution, (9) preliminary injunction against the use of occupancy tax proceeds for public safety services and equipment, (10) permanent injunction against the transfer of occupancy tax proceeds to the County's General Fund, and the use occupancy tax proceeds for public safety services or any other unlawful purpose, (11) court construction of the term "tourism-related expense" under N.C. Gen. Stat. § 1-254 (2023), (12) permanent injunction requiring the County to restore and replace unlawfully used occupancy tax proceeds, and (13) inclusion of the County Manager in his individual capacity.

The County filed its answer and partial motion to dismiss plaintiffs' claims pursuant to N.C. Gen. Stat. § 1A-1, Rules 12(b)(1), (2), and (6) (2023). The motion to dismiss alleged that: (1) the Board of Commissioners did not have the legal capacity to be sued,[1] (2) the County Manager was not a proper party,[2] and (3) plaintiffs' claim under the North Carolina Constitution was unavailable.[3] Plaintiffs then moved to preliminarily enjoin use of the funds for contested purposes, which the trial court later denied. Thereafter, plaintiffs moved for partial summary judgment as to their second cause of action concerning expenditures of occupancy tax proceeds "for public safety services, including police, emergency medical and fire services and equipment." The County moved for summary judgment as to all of plaintiffs' claims and requested the trial court to strike an affidavit submitted in plaintiffs' motion. The trial court held a hearing on the cross-motions in which it assessed "such weight and relevancy as it deem[ed] appropriate" to the contested affidavit, ordered summary judgment for the County on all claims, and denied plaintiffs' request for partial summary judgment. Plaintiffs timely entered their notice of appeal.

## II. **Jurisdiction**

Jurisdiction is proper under N.C. Gen. Stat. § 7A-27(b)(1) (2023) since the trial court's order granting summary judgment is a final judgment.

---

[1] The trial court dismissed the Board of Commissioners from the suit.
[2] Plaintiffs filed a notice of voluntary dismissal of the County Manager in his individual capacity and the trial court granted a dismissal in his official capacity from the suit.
[3] The trial court dismissed this cause of action from the suit.

### III.  Analysis

### A.  Tourism-Related Expenditures

The Session Law, enacted in 1987, allowed for three-quarters of the net proceeds of the tax levied under its subsection 1(a), to be spent "only for tourist related purposes, including construction and maintenance of public facilities and buildings, garbage, refuse, and solid waste collection and disposal, police protection, and emergency services."  N.C. Sess. Law 1987, Chapter 209, H.B. 555, § 1(e).  But, in 2004, the Amendment deleted this text and directed that the net proceeds of such tax levied under this subsection *shall* be used "only for tourism-related expenditures, including beach nourishment."  N.C. Sess. Law 2004-95, H.B. 1721 § 2(e).  The Amendment also removed the text directing the County to deposit the remainder of the net proceeds into its General Fund to "be used for any lawful purpose."  N.C. Sess. Law 1987, Chapter 209, H.B. 555, § 1(e); N.C. Sess. Law 2004-95, H.B. 1721 § 2(e). Additionally, the Amendment authorized a "Second Additional Occupancy Tax" under its subsection 1(a2) only if the County "also levies the tax under subsections (a) and (a1)."[4]  N.C. Sess. Law 2004-95, H.B. 1721 § 1(a2).  However, the Amendment modified how the County "may" use the net proceeds of tax levied under subsections (a1) and (a2) to "shall use at least two-thirds" of these funds "to promote travel and tourism and shall use the remainder . . . for tourism-related expenditures."  N.C. Sess.

---

[4] Referencing 1987 N.C. Sess. Laws 209, § 1(a) and N.C. Sess. Law 1999-155, H.B. 665 § 1(a1).

Law 2004-95, H.B. 1721 § 2(e). Moreover, the Amendment required the County to create a Tourism and Development Authority to "expend the net proceeds of the tax levied under this act." N.C. Sess. Law 2004-95, H.B. 1721 § 3.

Not only did the Amendment eliminate portions of the Session Law, but it also provided greater specificity with definitions to direct the use of funds. N.C. Sess. Law 2004-95, H.B. 1721 § 2(e). Notably, the Amendment defined "tourism-related expenditures" as those that "in the judgment of the . . . Board of Commissioners, are designed to increase the use of lodging facilities, meeting facilities, recreational facilities, and convention facilities in a county by attracting tourists or business travelers to the county. The term includes tourism-related capital expenditures and beach nourishment." *Id.* And it defined expenditures that "promote travel and tourism" as those that "advertise or market an area or activity, publish and distribute pamphlets and other materials, conduct market research, or engage in similar promotional activities that attract tourists or business travelers to the area; the term includes administrative expenses incurred in engaging in these activities." *Id.* Language was also added to clarify the definition of net proceeds as "[g]ross proceeds less the cost to the county of administering and collecting the tax, as determined by the finance officer, not to exceed three percent [ ] of the first five hundred thousand dollars [ ] of gross receipts collected each year." *Id.*

The parties do not dispute that the Amendment eliminated the term "tourism related purposes," which the 1987 Session Law defined to include "construction and

maintenance of public facilities and buildings, garbage, refuse, and solid waste collection and disposal, police protection and emergency services." Also, the parties do not dispute that the Amendment replaced the term "tourism related purposes" with "tourism-related expenditures." The dispute concerns whether the Amendment prohibits certain expenditures that the County has classified as tourism-related expenditures. Plaintiffs contend that the County acted *ultra vires* by using these funds to pay for general public services because the General Assembly deauthorized such spending in the Amendment. However, the County points to language in the Amendment that allows for the "the judgment of the . . . Board of Commissioners," to determine which expenditures are categorized as tourism-related.

Questions of statutory interpretation are reviewed *de novo*. *In re Ernst & Young, L.L.P.*, 363 N.C. 612, 616, 684 S.E.2d 151, 154 (2009) (citations omitted). "The primary objective of statutory interpretation is to ascertain and effectuate the intent of the legislature." *McCracken & Amick, Inc. v. Perdue*, 201 N.C. App. 480, 485, 687 S.E.2d 690, 694 (2009), *disc. review denied*, 364 N.C. 241, 698 S.E.2d 400 (2010). "When the language of a statute is clear and without ambiguity, it is the duty of this Court to give effect to the plain meaning of the statute, and judicial construction of legislative intent is not required." *Diaz v. Div. of Soc. Servs.*, 360 N.C. 384, 387, 628 S.E.2d 1, 3 (2006) (citation omitted). "However, when the language of a statute is ambiguous, this Court will determine the purpose of the statute and the intent of the legislature in its enactment." *Id.* "Where . . . the statute, itself, contains a definition

of a word used therein, that definition controls, however contrary to the ordinary meaning of the word it may be." *In re Clayton-Marcus Co.*, 286 N.C. 215, 219, 210 S.E.2d 199, 203 (1974). "If the words of the definition, itself, are ambiguous, they must be construed pursuant to the general rules of statutory construction, including those above stated." *Id.* at 220, 210 S.E.2d at 203. With these principles in mind, we must consider whether the disputed expenditures are "designed to increase the use of lodging facilities, meeting facilities, recreational facilities, and convention facilities in a county by attracting tourists or business travelers to the county." N.C. Sess. Law 2004-95, H.B. 1721 § 2(e).

To the extent any ambiguity exists in the Amendment's use of the language "the judgment of the . . . Board of Commissioners" or "tourism-related expenditure," our analysis is guided by precedent which weighs against constructing the text as giving the Board of Commissioners unlimited discretion. "It is not consonant with our conception of municipal government that there should be no limitation upon the discretion granted municipalities. . . ." *Efird v. Bd. of Comm'rs for Forsyth Cnty.*, 219 N.C. 96, 106, 12 S.E.2d 889, 896 (1941) (citations omitted). "Counties . . . exist solely as political subdivisions of the State and are creatures of statute. They are authorized to exercise only those powers expressly conferred upon them by statute and those which are necessarily implied by law from those expressly given." *Davidson Cnty. v. High Point*, 321 N.C. 252, 257, 362 S.E.2d 553, 557 (1987) (citations omitted). And, "[p]owers which are necessarily implied from those expressly granted are only those

which are indispensable in attaining the objective sought by the grant of express power." *Id.* (citation omitted). Furthermore, such statutorily granted powers are to be "strictly construed." *Id.* (citations omitted). Thus, total deference to the judgment of the Board of Commissioners defies strict construction of their statutorily granted powers under the Amendment. *See Nash-Rocky Mount Bd. of Educ.*, 169 N.C. App. 587, 589, 610 S.E.2d 255, 258 (2005).

We are also guided by the actions of the Legislature in their enactment of the Amendment. "[A] change in the language of a prior statute presumably connotes a change in meaning." Antonin Scalia & Bryan A. Garner, *Reading Law: The Interpretation of Legal Texts* 256 (2012). "Legislative history is a factor to consider in determining legislative intent." *Burgess v. Your House of Raleigh, Inc.,* 326 N.C. 205, 216, 388 S.E.2d 134, 141 (1990) (citation omitted). The Amendment serves as "an aid in arriving at the correct meaning of a prior statute by utilizing the natural inferences arising out of the legislative history." *Id.* (citations omitted). Here, we cannot ignore the Legislature's deliberate actions that eliminated some explicitly permitted uses of occupancy tax proceeds and crafted a definition of "tourism-related expenditures." N.C. Sess. Law 2004-95, H.B. 1721, § 2(e)(4). Likewise, it is difficult to overlook the Amendment's creation of a Tourism Development Authority "to expend the net proceeds of the tax levied under this act. . . ." N.C. Sess. Law 2004-95, H.B. 1721, § 3. *See Bryant v. Wake Forest Univ. Baptist Med. Ctr.*, 281 N.C. App. 630, 642, 870 S.E.2d 269, 277 (2022) ("[A] statute should not be interpreted in a manner which

would render any of its words superfluous. We construe each word of a statute to have meaning, where reasonable and consistent with the entire statute, because it is always presumed that the legislature acted with care and deliberation.").

Our interpretation is correspondingly informed by the Amendment's title: "AN ACT TO ALLOW AN INCREASE IN THE CURRITUCK COUNTY TAX AND TO CHANGE THE PURPOSE FOR WHICH THE TAX MAY BE USED." N.C. Sess. Law 2004-95, H.B. 1721; *see State ex rel. Cobey v. Simpson*, 333 N.C. 81, 90, 423 S.E.2d 759, 763-64 (1992) ("We therefore cannot, as defendant would have us do, ignore the title of the bill.") When "the meaning of a statute is in doubt, reference may be made to the title and context of an act to determine the legislative purpose." *Preston v. Thompson*, 53 N.C. App. 290, 292, 280 S.E.2d 780, 782 (1981); *see also Sykes v. Clayton*, 274 N.C. 398, 406, 163 S.E.2d 775, 781 (1968) (holding the title of a bill is "a legislative declaration of the tenor and object of the act"). Though not dispositive, the Amendment's title—which includes notating a change to the purpose for which the occupancy tax may be used— displays an intent by the Legislature to limit the scope of how occupancy tax expenditures may be used. *See, e.g., In re FLS Owner II, LLC*, 244 N.C. App. 611, 616, 781 S.E.2d 300, 303 (2016); *Ray v. N.C. Dep't of Transp.*, 366 N.C. 1, 8, 727 S.E.2d 675, 681 (2012); *State v. Flowers*, 318 N.C. 208, 215, 347 S.E.2d 773, 778 (1986).

Considering the Legislature's actions—the significant changes in the text and title of the Amendment—we can only conclude that their intent was to narrow the scope of how the County is permitted to use occupancy tax funds. While the County

- 11 -

has discretion in deciding how to dispel occupancy taxes, it must do so within the directives set by the Legislature. *See Nash-Rocky Mount Bd. of Educ.*, 169 N.C. App. at 590, 610 S.E.2d at 258. Our *de novo* review leads us to conclude that although the County was permitted some discretion in determining the use of net proceeds from occupancy tax levies, the Legislature intentionally removed some previously permitted uses and provided a narrower definition with definitive perimeters to prohibit some of the County's customary expenditures permitted by the Session Law.

## B. The Trial Court's Order for Summary Judgment

Following the dismissal of plaintiffs' claim under the North Carolina Constitution and denial of a preliminary injunction, plaintiffs moved for partial summary judgment and the County moved for summary judgment as to the remaining claims. Among those remaining claims, plaintiffs requested that the trial court enter declaratory judgment that the County's expenditures of occupancy tax proceeds for the following purposes are unlawful: (1) public safety services and equipment, (2) non-promotional operations and activities of the County's Economic Development Department, (3) construction of a park and restoration of a building historically used as a jail, (4) loan of occupancy tax proceeds to finance the construction of a water treatment facility, and (5) funding of special service districts. Further, plaintiffs maintained that these disputed uses of occupancy tax proceeds violate the Amendment and N.C. Gen. Stat. § 159.13(b)(4) (2023), which prohibit expenditures of revenue for purposes not permitted by law and sought judgment

declaring the transfer of these funds from the Tourism Development Authority Fund to the County's General Fund unlawful. Additionally, plaintiffs requested court construction of the term "tourism-related expense" under N.C. Gen. Stat. § 1-254 (2023). In view of the foregoing claims, plaintiffs requested a permanent injunction against the transfer occupancy tax proceeds to the County's General Fund, used for any unlawful purpose, as well as a permanent injunction requiring the County to restore and replace unlawfully used occupancy tax proceeds. The parties presented the trial court with their cross-motions for summary judgment based on conflicting interpretations of the Amendment and its impact on expenditures originally authorized under the Session Law. N.C. Sess. Law 2004-95, H.B. 1721; N.C. Sess. Law 1987, Chapter 209, H.B. 555. The trial court denied partial summary judgment for plaintiffs and granted summary judgment for the County as to all claims.

A trial court should grant summary judgment only if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that any party is entitled to a judgment as a matter of law." N.C. Gen. Stat. § 1A-1, Rule 56(c). "An issue is material if the facts alleged would constitute a legal defense, or would affect the result of the action. . . . The issue is denominated 'genuine' if it may be maintained by substantial evidence." *Koontz v. City of Winston-Salem*, 280 N.C. 513, 518, 186 S.E.2d 897, 901 (1972). "When considering a motion for summary judgment, the trial judge must view the presented evidence in a light most favorable

to the nonmoving party." *Dalton v. Camp*, 353 N.C. 647, 651, 548 S.E.2d 704, 707 (2001) (citation omitted). "The trial court may not resolve issues of fact and must deny the motion if there is a genuine issue as to any material fact." *Forbis v. Neal*, 361 N.C. 519, 524, 649 S.E.2d 382, 385 (2007) (citation omitted).

Plaintiffs moved for summary judgment only as to their second cause of action, asserting an "impropriety of occupancy tax expenditures by the County on what [it] termed general public safety services." Plaintiffs characterized "general public safety services" to include police, fire, and emergency medical services and equipment. Further, plaintiffs maintained that other taxes, such as lodging and sales tax from tourists, are available to cover costs incidental to the impact of tourism with respect to these items. In support of their position, plaintiffs presented an affidavit citing documents and records of the County. The data displayed unrefuted instances of occupancy tax proceeds appropriated for the Currituck Outer Banks area's seasonal law enforcement and emergency medical services correlating to full annual costs. Moreover, the numbers showed that these funds covered the costs of equipment for law enforcement and a fire hydrant. The County does not dispute the expenditures alleged by plaintiffs. Rather, it moved the trial court for summary judgment as to the balance of the claims, arguing that "finances are just not relevant in this motion," and that the law "allow[ed] the County Board of Commissioners to determine what is a tourism-related expenditure." The record reveals no controversy as to the facts but as to the legal significance of those facts.

While plaintiffs' claim sought declaratory relief, this case is proper for summary judgment determining the applicability of the Amendment. *See Blades v. Raleigh*, 280 N.C. 531, 545, 187 S.E.2d 35, 43 (1972) ("Here, there is no substantial controversy as to the facts disclosed by the evidence. The controversy is as to the legal significance of those facts. Such controversy as there may be in respect of the facts presents questions of fact for determination by the court."). The County does not dispute the actions of the Legislature and contents of the Amendment but contends that since tourists create an increased need for services, it is permitted to use occupancy tax dollars to offset such costs. However, our analysis of the text of the Amendment and the Legislature's intent leads us to a different conclusion. The expenditures of the occupancy tax proceeds in the "judgment" of the Board of Commissioners are reviewable and subject to the constraints contained in the law. *See Efird v. Bd. of Comm'rs for Forsyth Cnty.*, 219 N.C. at 106, 12 S.E.2d at 896. The constraints here are readily apparent from the plain language contained in the Amendment as the authority to expend these resources in this manner was neither expressly conferred upon the County nor necessarily implied from those expressly given. *See Davidson Cnty. v. High Point*, 321 N.C. at 257, 362 S.E.2d at 557. Moreover, any alleged ambiguity within the law is resolved by the title of the Amendment and the Legislature's removal of specific language. *See Burgess v. Your House of Raleigh, Inc.,* 326 N.C. at 216, 388 S.E.2d at 141; *see State ex rel. Cobey v. Simpson*, 333 N.C. at 90, 423 S.E.2d at 763-64.

We conclude that the disputed expenditures in plaintiffs' second cause of action are not "designed to increase the use of lodging facilities, meeting facilities, recreational facilities, and convention facilities . . . by attracting tourists or business travelers to the county." N.C. Sess. Law 2004-95, H.B. 1721 § 2 (e). Here, "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that any party is entitled to a judgment as a matter of law" as to plaintiffs' second claim for relief. N.C. Gen. Stat. § 1A-1, Rule 56(c). Accordingly, we reverse the trial court's denial of partial summary judgment for plaintiff and vacate the trial court's grant of summary judgment for the County as to the remaining claims. We remand this matter for proceedings not inconsistent with this opinion.

## IV.  Conclusion

An application of guiding legal principles and precedent leads us to conclude that significant alterations to the original language contained in the Session Law and additions included in the Amendment convey an intent by the Legislature to narrow the scope of expenditures funded by the net proceeds of levied occupancy tax. The Amendment limits the discretion of the Board of Commissioners and requires that such funds shall be spent only as permitted by strict construction of the term "tourism-related expenditures." Considering the evidence contained in the record, in a light most favorable to the County, we hold that the County did not act in accordance with the Amendment when spending occupancy tax proceeds for public

safety services and equipment. This is not to say that the County has acted in bad faith, rather our determination is based on expenditures contained in the record which were no longer authorized after the Amendment was enacted. Therefore, we reverse the trial court's denial of summary judgment for plaintiffs and remand to the Superior Court for entry of summary judgment for plaintiffs as to the past expenditures in their second cause of action. We also vacate the trial court's grant of summary judgment for the County on the remaining claims. Furthermore, we remand this matter to the trial court for proceedings not inconsistent with this opinion.

REVERSED IN PART, VACATED IN PART, AND REMANDED.

Judge MURPHY concurs.

Judge HAMPSON concurs in a separate opinion.

No. COA22-699 – *Costanzo v. Currituck Cnty.*

HAMPSON, Judge, concurring.

I agree with the Opinion of the Court that (a) summary judgment was improperly entered for the County on the second claim for relief; (b) summary judgment as to the remaining claims should also be vacated; and (c) this matter should be remanded to the trial court for further proceedings. I write separately to emphasize that—in my view—the County's use of occupancy tax funds to fund law enforcement, emergency medical services, and fire protection might well be expenditures that, "in the judgment of the . . . Board of Commissioners, are designed to increase the use of lodging facilities, meeting facilities, recreational facilities, and convention facilities in a county by attracting tourists or business travelers to the county." 2004 N.C. Sess. Law 95, § 2(e)(4). Here, however, the Record does not disclose that in appropriating the proceeds of the occupancy tax, the County— through its Board of Commissioners—exercised its judgment, or discretion, in so doing.

The local legislation at issue provides a statutory mechanism whereby the County may enact occupancy taxes. *See* 1987 N.C. Sess. Laws 209, § 1(a); 2004 N.C. Sess. Law 95, § 1(a2). The Board of Commissioners then exercises its judgment to determine what are tourism-related expenditures. 2004 N.C. Sess. Law 95, § 2(e). As Defendants note in their briefing, the 2004 amended act also required creation of the Currituck County Tourism Development Authority (TDA). The act further

imposes the duty on the TDA to expend the occupancy tax revenue to "promote travel, tourism, and conventions in the county, sponsor tourist-related events and activities in the county, and finance tourist-related capital projects in the county." 2004 N.C. Sess. Law 95, § 3(1.1).

The Record here—including Defendants' own forecast of evidence—reflects, however, all occupancy tax revenue goes to the TDA, which keeps 1/3 of the funds for its tourism-related activities and submits the remaining 2/3 of the funds back to the County's general fund for spending by the County in the Commissioners' discretionary budgetary authority. Nowhere in this process is there any indication that the Board of Commissioners is exercising any judgment in determining what constitutes a tourism-related expenditure before funds are assigned to the general fund (or other special funds). In my view, while it facially appears the County is proceeding in good faith and there is no allegation the County's budgetary process does not conform to law, the County's appropriations of the occupancy tax is being performed under a misapprehension of the applicable law. *See Hines v. Wal-Mart Stores E., L.P.*, 191 N.C. App. 390, 393, 663 S.E.2d 337, 339 (2008) ("A discretionary ruling made under a misapprehension of the law, may constitute an abuse of discretion." (citations omitted)). Thus, I would conclude the County has abused its discretion in its appropriation of the occupancy tax revenues without exercising its judgment to determine it was expending those funds for tourism-related activities. Therefore, the trial court's order is properly reversed in part, vacated in part, and

this matter remanded for further proceedings.